**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **THE PARDON ATTORNEY**[1] | ) |
| Tammy Allison[2], | ) |
| Sole Managing Attorney, | ) |
|      Attorney Tammy Allison, PLLC[3] | ) |
| Sole Managing Member, | ) |
|      Own Your Passion, LLC[4] | ) |
| Former Democratic Congressional Candidate, | ) |
|      Tammy For Texas, Texas District 6 | ) |
|      ID: H2TX06277, *Closed*, 2021 | ) |
|      Tammy for You, Maryland District 4 | ) |
|      ID: H2MD04364, *Closed*, 2022 | ) |
| *In her individual and official capacities; and on* | ) |
| *behalf of each contractor, prospective client and* | ) |
| *client of her businesses and political committees*[5] | ) |
| | ) |
| **NUDAL, LLC**[6] | ) |
| Caleb Young, Sole Managing Member | ) |
| Former Democratic Campaign Director, | ) |
| Tammy For You, Maryland District 4 | ) |
| Former Democratic Volunteer, | ) |
| Tammy for Texas, Texas District 6 | ) |
| 1900 N. Beckley Ave. Apt. 3060 | ) |
| Dallas, Texas 75208 | ) |
| *In his official and individual capacities* | ) |
| | ) |
| **JESUS GREGORIO MACIAS-MUNOZ** | ) |
| **BUBACARR TUNKARA** | ) |
| **ARASH GOLSHANI** | ) |
| **DON BETHEL** | ) |
| **RHONDA LOPEZ** | ) |
| **NADIA HAIDER** | ) |
| **RAYMUNDO JASSO** | ) |
| **ALLISTER HOLMES** | ) |
| **JAMONE BANKS** | ) |
| **MATTHEW THOMAS** | ) |
| **DARRYL AND CHARLENE LAWTON** | ) |
| **MONEY TRAIN, LLC** | ) |
| **CEDRIC DORMAINE HILL** | ) |
| **SURAJUDEEN SERIKI** | ) |
| **CHARLES HOLDER** | ) |
| **ESTATE OF DR. MATULU SHAKUR** | ) |
| **JAMES "JIMMY HENCHMAN" ROSEMOND** | ) |

| | |
|---|---|
| **FRANK AMADEO** | ) |
| **TIFFANI DIOR FORBES** | ) |
| **WARREN CHARLTON** | ) |
| **MATTHEW BRUNSTRUM** | ) |
| **JEFFREY MATHIS** | ) |
| **BRIANNA BAUCUM** | ) |
| **TOBY LUJAN** | ) |
| **SAM HURD** | ) |
| **INITA JACOBS** | ) |
| **MARVIN REEVES** | ) |
| **DONOVAN STRICKLAND** | ) |
| **STEVEN T. CORBIN** | ) |
| **LAMAR BISHOP WHITEHEAD** | ) |
| | ) Civil Action No. _____ |
| *Plaintiffs* | ) Jury Trial Requested |
| | ) |
| vs. | ) |
| | ) |
| **THE OFFICE OF** | ) |
| **PARDON ATTORNEY** | ) |
| ELIZABETH OYER | ) |
| Pardon Attorney | ) |
| 145 N St NE #5e | ) |
| Washington, DC 20530 | ) |
| *In her official capacity only* | ) |

---

1. **Children**

---

[1]Attorney Tammy Allison, PLLC, is a Texas Professional Limited Liability Company, doing business as The Pardon Attorney. *See*: https://www.thepardonattorney.com/

[2]Holloway is the legal last name due to the fact that Defendant, the Federal Bureau of Investigations appears to have given directives to Maryland Attorney Jessica Charles to not change her last name back to her maiden name, Allison.

[3]A Texas Professional Limited Liability Company was established on November 6, 2019.

[4]A Texas Limited Liability Company was established November 6, 2019.

[5]Between The Pardon Attorney and Own Your Passion, LLC there are approximately 4,000 clients whose privacy rights were breached and property taken without any notice or due process of law. Individuals involved with each Congressional Committee range in the hundreds. Each plan on bringing their own cause of action for breach of privacy and return of property and do not waive any of their rights with respect to their claims as a result of the instant matter.

[6] A Texas Limited Liability Company established March 8, 2022.

2

**LIZ RYAN** )
Administrator )
The Office of Juvenile Justice and )
Delinquency Prevention )
810 7th St. NW )
Washington, D.C. 20531 )
*In her individual and official capacities* )
)
**JOHN F. CLARK** )
National Center for Missing & )
Exploited Children ("NCMEC") )
333 John Carlyle Street Suite #125 )
Alexandria, Virginia 22314-5950 )
*In her individual and official capacities* )
 )
**KEN PAXTON** )
Texas Attorney General )
Office of the Attorney General )
Special Litigation Division )
P.O. Box 12548 Capitol Station )
Austin, Texas 78711-2548 )
*In his official capacity only* )
)
**MONTGOMERY COUNTY** )
**PUBLIC SCHOOLS** )
Karla Silvestre )
President )
850 Hungerford Drive )
Rockville, MD 20850 )
*In her official capacity*  )
)
**MARYLAND STATE DEPARTMENT** )
**OF EDUCATION** )
Carey M. Wright )
State Superintendent of Schools )
200 West Baltimore Street )
Baltimore, Maryland 21201 )
*In her official capacity*  )
)
**MARYLAND DEPARTMENT OF** )
**HEALTH AND HUMAN SERVICES** )
Rafael Lopez )
Secretary )
25 South Charles Street )
Baltimore, MD 21201-3330 )
*In his individual and official capacities* )

3

**2.  Client Matters**

| | |
|---|---|
| **TIM MCDONNELL** | ) |
| Chief of Staff, Texas Board of | ) |
| Pardons and Paroles | ) |
| P. O. Box 13401 | ) |
| Austin, Texas 78711-3401 | ) |
| *In his official capacity only* | ) |
| ) | |
| **GWENDOLYN M. HORTH** | ) |
| Chair | ) |
| Indiana Parole Board | ) |
| 402 West Washington Street, Room W466 | ) |
| Indianapolis, IN 46204-2243 | ) |
| *In her independent and official capacities* | ) |
| ) | |
| **KELLY GEE** | ) |
| Secretary of the Commonwealth | ) |
| Pardons | ) |
| Office of the Secretary of the Commonwealth | ) |
| Post Office Box 2452 | ) |
| Richmond, Virginia 23218-2452 | ) |
| *In her independent and official capacities* | ) |
| | ) |
| **OFFICE OF COMMONWEALTH'S** | ) |
| **ATTORNEY** | ) |
| **HENRICO, COUNTY** | ) |
| Shannon Taylor | ) |
| 4309 E Parham Rd | ) |
| Richmond, VA 23228 | ) |
| *In her independent and official capacities* | ) |

**3. Intelligence Community**                         )
**JOSEPH BIDEN**                                     )
President, United States of America                  )
Chair, National Security Council[7]                  )
Chair, Homeland Security Council[8]                  )

---

[7] The Council is not an agency, so while the President is the chair, the Vice President, the Secretary of State, the Secretary of the Treasury, the Secretary of Defense, the Secretary of Energy, the Attorney General, the Secretary of Homeland Security, the Representative of the United States of America to the United Nations, the Administrator of the U.S. Agency for International Development, the Chief of Staff to the President, and the Assistant to the President for National Security Affairs. The Chairman of the Joint Chiefs of Staff is the military advisor to the Council, and the Director of National Intelligence is the intelligence advisor. Counsel to the President and the Legal Advisor to the NSC are invited to attend every NSC meeting. *See*: https://www.whitehouse.gov/nsc/

[8] The members of the HSC are the Vice President, the Secretary of Homeland Security, the Secretary of the Treasury, the Secretary of Defense, the Attorney General, the Secretary of Health and Human Services, the Secretary of Transportation, the Director of National Intelligence, the Director of the Federal Bureau of

Eisenhower Executive Office Building                )
1650 17th St NW                                     )
Washington, DC 20006                                )
*In his official capacity only*                     )
                                                    )
**WILLIAM J. BURNS**                                )
Director, Central Intelligence Agency                    )
1000 Colonial Farm Road in Langley                       )
Fairfax County, Virginia                            )
*In his individual and official capacities*         )
                                                    )
**AVRIL HAINES,**                                   )
Director, Office of the Director for                )
National Intelligence                               )
1500 Tysons McLean Dr.                              )
McLean, VA 22102                                    )
*In her individual and official capacities*         )
                                                    )
**BRETT HOLMGREN**                                  )
Director, National Counterterrorism Center          )
1500 Tysons McLean Dr.                              )
McLean, VA 22102                                    )
*In his individual and official capacities*         )
                                                    )
**LLOYD J. AUSTIN III**                             )
Secretary of Defense[9]                             )
1400 Defense Pentagon                               )
Washington, DC 20301-1400                           )
*In his official capacity only*                     )
                                                    )
**GENERAL TIMOTHY D. HAUGH**                        )
Director, National Security Agency                  )
National Security Agency (NSA)                      )
9800 Savage Rd., Suite 6272                         )

---

Investigation, and the Assistant to the President for Homeland Security and Counterterrorism. The following senior officials are invited to attend any HSC meeting: the Chief of Staff to the President, the Chief of Staff to the Vice President, the Assistant to the President for National Security Affairs, the Counsel to the President, the Director of the Office of Management and Budget, and the Chairman of the Joint Chiefs of Staff. Other senior officials are invited to attend HSC meetings pertaining to their responsibilities  or otherwise as appropriate.

[9]*See*:
https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/503007p.pdf?ver=FdbnkRjs8wfSzwTV7XNPGw%3D%3D

Fort George G. Meade, MD 20755-6000   )
*In his official capacity only*     )
)
**JEFFREY A.  KRUSE**      )
Defense Intelligence Agency     )
Office of Corporate Communications (OCC) )
7400 Pentagon        )
Washington, DC 20301     )
*In his official capacity*        )
)
**CHRISTOPHER WRAY,**    )
Director, Federal Bureau of Investigations  )
935 Pennsylvania Avenue NW    )
Washington, DC 20535     )
In his official capacity

**GREGG C. DOMROE**     )
Supervisory Special Agent     )
Public Corruption/Civil Rights    )
Federal Bureau of Investigation    )
Baltimore Field Office       )
*In his individual and official capacities*  )
)
**ROSEMARIA V. MARKETOS[10]**   )
Special Agent        )
Federal Bureau of Investigation    )
Director, Federal Bureau of Investigations  )
935 Pennsylvania Avenue NW    )
Washington, DC 20535     )
*In her individual and official capacities*  )

**VERIZON BUSINESS**     )
Robert Blakely        )
22001 Loudoun County Pkwy    )

---

[10] Rose presented herself as an agent investigating the matters in the instant complaint; however, it was her false accusation that the undersigned counsel threatened her that prompted the instant complaint.  It is noteworthy that her affidavit regarding January 6, where the undersigned counsel knows the head prosecutor, Gregory Rosen, was presented to Magistrate Judge Zia Faruqui *See*:
https://extremism.gwu.edu/sites/g/files/zaxdzs5746/files/Zachary%20Alam%20Statement%20of%20Facts.pdf she also appears during the House Oversight hearing where Jasmine Crockett is who Ms. Allison  publicly endorsed after her own run for U.S. Congress. Jasmine is on the Oversight Committee.  *See*: https://oversight.house.gov/wp-content/uploads/2024/02/Bobulinski-Transcript.pdf

Ashburn, VA 20147                                           )
1355 Market St.                                             )
Suite 900                                                   )
San Francisco, CA 94103                                     )
*In his individual and official capacities*                )
)
**STRIPE, INC.**                                            )
Patrick Collison                                            )
354 Oyster Point Boulevard                                  )
South San Francisco                                         )
California, 94080                                           )
*In his official capacity only*                             )
)
**ALPHABET INC.**                                           )
Pichai Sundararajan                                         )
Chief Executive Officer                                     )
1600 Amphitheatre Parkway                                   )
Mountain View, CA 94043                                     )
*In his official capacity only*                             )
)
**APPLE INC.**                                              )
One Apple Park Way                                          )
Cupertino, CA 95014
*In her individual and official capacities*                 )
)
**META PLATFORMS, INC.**                                    )
1 Meta Way                                                  )
Menlo Park, CA 94025-1452                                   )
*In his official capacity*

---

**4. Homeland Security**

**ALEJANDRO NICHOLAS MAYORKAS**                             )
Secretary, U.S. Department of                               )
Homeland Security                                           )
1880 2nd Street Southwest                                   )
Washington, DC 20528                                        )
*In his official capacity only*                             )
)
**KEN WAINSTEIN**                                           )
Secretary for Intelligence and Analysis                     )
U.S. Department of                                          )

Homeland Security                              )
3801 Nebraska Ave NW                           )
Washington, DC 20528                           )
*In his official capacities*                   )
                                               )
**KRIS CLINE**                                 **)**
Director, Federal Protective Service           )
U.S. Department of                             )
Homeland Security                              )
US General Services Administration             )
Regional Administrator                         )
301 7th St SW # G217                           )
Washington, DC 20407                           )
*In his individual and official capacities*    )
)
**BRAD SCHULTZ**                               **)**
Special Deputy U.S. Marshal                    )
Justice Protective Service                     )
950 Pennsylvania Avenue NW                     )
Washington, D.C. 20530                         )
*In his independent and official capacities*   )
 )
**KATRINA W. BERGER**                          **)**
Executive Associate Director                   )
Homeland Security Investigations               )
500 12th St SW                                 )
Washington, DC 20536                           )
*In her individual and official capacities*    )
)
**UR M. JADDOU**                               **)**
Director, U.S. Citizenship and                 )
Immigration Services                           )
5900 Capital Gateway Dr.                       )
Camp Springs, MD 20746                         )
*In his official capacity*                              )

---

**5. Courts**
**OFFICE OF MILITARY COMMISSIONS**    **)**
Susan Escallier                               )
Convening Authority                           )
4800 Mark Center Drive                        )
Suite 11F09-02                                )
Alexandria, Virginia 22350                    )
*In her official capacity only*               )
)
**ADMINISTRATIVE OFFICE OF**       **)**
**THE COURTS**                                )

Robert J. Conrad, Jr. )
Director )
Foreign Intelligence Surveillance Court[11] )
One Columbus Circle NE., )
Washington, DC 20544 )
*In his official capacity only* )
 )
**SCOTT HARRIS** )
Clerk )
Supreme Court of the United States )
1 First Street, NE )
Washington, DC 20543 )
*In his official capacity* )
 )
**BERYL HOWELL** )
Judge )
U.S. District Court for D.C. )
Administrative Office of the Courts )
5415 Manning Place Northwest, )
Washington, DC 20016 )
*In her individual and official capacities* )
 )
**MARK COATES** )
Clerk )
Administrative Office of the Courts )
US Courthouse, Room 2010 )
333 Constitution Avene NW )
Washington DC 20001 )
*In his individual and official capacities* )
 )
**TEXAS COURTS** )
Megan LaVoie 
Office of Court Administration )
205 West 14th Street, Suite 600 )
Austin, TX 78701 )
*In his official capacity* )
 )

---

[11]*See:* Foreign Intelligence Surveillance Court (FISC) Meeting 333 Constitution Ave. NW FISC Space-Room 3226 of the E. Barrett Prettyman United States Courthouse and
https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/ag-cal-nov2009.pdf, page 58 and
https://www.washingtonpost.com/politics/for-secretive-surveillance-court-rare-scrutiny-in-wake-of-nsa-leaks/2013/06/22/df9eaae6-d9fa-11e2-a016-92547bf094cc_story.html.

**ADMINISTRATIVE OFFICE OF**     )
**THE MARYLAND COURTS**     )
Stephane J. Latour     )
Managing Legal Counsel     )
187 Harry S. Truman Parkway     )
Annapolis, Maryland 21401     )
*In her individual and official capacities*     )
    )
**JOHN M. MALONEY**     )
Judge, Circuit Court for Montgomery     )
 County, Maryland     )
12527 Heurich Road     )
Silver Spring, MD 20902     )
*In his individual and official capacities*     )
)
**SHARON BURRELL**     )
Judge, Circuit Court for     )
Montgomery County, Maryland     )
13244 Trebleclef Lane     )
Silver Spring, MD 20904     )
*In her individual and official capacities*     )
)
**J. BRADFORD MCCULLOUGH**[12]     )
Judge     )
Circuit Court for Montgomery County, Maryland     )
1 Stratton Court     )
Potomac, MD 20854     )
*In his individual and official capacities*     )
    )
**MELANIE M. SHAW GETER**     )

---

[12] *See:* https://www.electsittingjudgesmcs.com/meet-the-judges/

10

Judge of the Maryland Court of        )
 Appeals 4th Appellate Circuit           )
4406 Belle Avenue, No. 3101        )
Baltimore, MD 21207               )
*In her individual and official capacities*    )
)
**ROBERT PRENDER**             )
Americans with Disabilities Coordinator    )
District Court for Prince George's      )
County, Maryland                 )
14735 Main Street, Suite 173B,      )
Upper Marlboro, MD 20772-3042    )
*In his individual and official capacities*    )
)
**JAMES A. BONIFANT**         )
Trustee[13]                      )
Bonifant Family Cemetery Trust     )
Bonifant Family Cemetery        )
14504 Pebblestone Drive         )
Layhill, MD 20905              )
*In his individual and official capacities*    )

## 6. DOJ

**MERRICK GARLAND**          )
Attorney General                )
U.S. Department of Justice        )
5111 Edgemoor Lane            )
Bethesda, Maryland 20814       )
*In his individual and official capacities*   )
                               )

**LISA O. MONACO,**            )
Deputy Attorney General        )
U.S. Department of Justice        )
1427 Rhode Island Ave NW      )
Apt 301                     )
Washington, DC                )
*In her individual and official capacities*    )
)
**JOLENE ANN LAURIA[14]**        )

---

[13] The trustee of a family trust can be sued as Plaintiffs have a claim to assets held by that trust. James A. Bonifant, the trustee, of 16312 Old Orchard Rd, Silver Spring, MD 20905

[14] Lee Lofthus previously held this position while simultaneously serving on the Federal Bureau of Prison's private prison, Federal Prison Industries.

Assistant Attorney General for                    )
Administration                                             )
U.S. Department of Justice                         )
Justice Management Division                      )
950 Pennsylvania Avenue NW                   )
Room 1111                                               )
Washington, D.C. 20530                           )
*In her individual and official capacities*      )
)
**NORMAN WONG**                               )
Executive Office of United States Attorneys )
U.S. Department of Justice                         )
950 Pennsylvania Avenue NW                   )
Room 2242                                               )
Washington, DC 20530-0001                     )
*In his official capacity*                             )
)
**U.S. ATTORNEY'S OFFICE FOR D.C.**   )

Matthew Graves                                        )

U.S. Attorney                                            )

601 D St NW                                             )
Washington, DC 20004                             )
*In his individual and official capacities*       )
)
**U.S. ATTORNEY'S OFFICE FOR**          )
**MARYLAND**                                        )
Erek Barron                                             )
U.S. Attorney for Maryland                       )
4700 Belle Dor Trce                                 )
Bowie, MD 20720                                    )
*In his individual and official capacities*      )
)
**KIMBERELY STRATTON**                    )
AUSA                                                      )
U.S. Attorney's Office for D.C.                  )
601 D St NW                                            )
Washington, DC 20004                            )
*In her individual and official capacities*     )
)
**BRIAN HUDAK**                                  )
Civil Division Chief                                  )
U.S. Attorney's Office for D.C.                 )
601 D St NW                                            )
Washington, DC 20004                            )
*In his individual and official capacities*      )

**OFFICE OF ATTORNEY RECRUITMENT**                    )
**AND MANAGEMENT**                                     )
Eleanor Carpenter                                      )
Director                                               )
U.S. Department of Justice                             )
950 Pennsylvania Avenue                                )
Washington, DC 20530-0001                              )
*In her official capacity*                                          )
)
**RONALD L. DAVIS**                                    )
Director, U.S. Marshals Service                        )
1215 S. Clark St.                                      )

Arlington, VA 22202                                    )

*In his individual and official capacities*           )

)
**EXECUTIVE OFFICE OF**                 )
**IMMIGRATION REVIEW**                                 )
David Neal, Acting Director                            )
5107 Leesburg Pike                                     )
Falls Church, VA 22041                                 )
*In his official capacity*                             )
)
**KRISTEN CLARKE**                                     )
Assistant Attorney General                             )
Civil Rights Division                                  )
U.S. Department of Justice                             )
950 Pennsylvania Avenue NW                             )
Office of the Assistant Attorney General, Main         )
Washington DC 20530                                    )
*In her individual and official capacities*            )
)
**TIMOTHY A. FERGUSON**                 )
Acting Assistant Director                              )
Criminal Justice Information Services (CJIS)                        )
1000 Custer Hollow Rd.                                 )
Clarksburg, WV 26306                                   )
*In his individual and official capacities*            )
)
**STEVEN DETTELBACH**                                  )
Director                                               )
Bureau of Alcohol, Tobacco, Firearms and              )
Explosives (ATF)                                       )
Office of Public Affairs                               )
99 New York Avenue NE                                  )

Washington, DC 20226                                    )

---

**7. Private Prison**

**LEE LOFTHUS**                                          )
Interim Chief Executive Officer                          )
Federal Prison Industries, Inc. aka                      )
Unicor                                                   )
118635 Olney Mill Road                                   )
Olney, MD                                                )
*In his official and individual capacities*              )
                                                         )
**PRISON INDUSTRY ENHANCEMENT** )
**CERTIFICATION PROGRAM**[15]                            )
National Correctional Industries Association             )
800 North Charles Street                                 )
Suite 550B                                               )
Baltimore, MD 21201                                      )
*In his individual and official capacities*              )

---

[15]*See:* https://www.nationalcia.org/certification and https://www.nationalcia.org/about-piecp

**8. Local Law Enforcement**                          )
**HOUSTON POLICE DEPARTMENT**          )
Chief J. Noe Diaz                                           )
 Chief                                                             )
1200 Travis St                                              )
Houston, TX 77002                                      )
*In his official capacity*                              )
)
**DALLAS COUNTY POLICE**                  )
**DEPARTMENT**                                        )
Edgardo (Eddie) Garcia                              )
Chief                                                            )
1400 Botham Jean Blvd                            )
Dallas, TX 75215                                       )
)
**TRISTEN BIRL**                                        )
Peace Officer                                              )
Harris County Sherriff's Office                )
1200 Baker St                                             )
Houston, TX 77002                                    )
*In his official and individual capacity*                          )
)
**TEXAS DEPARTMENT OF**               )
**PUBLIC SAFETY**                                  )
Steven C. McCraw                                    )
Department of Public Safety of                )
the State of Texas                                      )
5805 North Lamar Blvd                          )
Austin, Texas                                            )
)
**MONTGOMERY COUNTY, MARYLAND**   )
**SHERRIFF'S OFFICE**                          )
Sheriff                                                        )
Maxwell C. Uy                                          )
50 Maryland Ave                                      )
Rockville, MD 20850                               )
*In his individual and official capacities*          )
)
**MONTGOMERY COUNTY POLICE**   )
Chief                                                          )
Marc Yamada                                            )
Public Safety Headquarters                    )
100 Edison Park Drive                            )

15

Gaithersburg, MD 20878                                )
*In his individual and official capacities*           )

---

**9. Elections**

**FEDERAL ELECTION COMMISSION**                       )
Allen Dickerson                                       )
Commissioner                                                      )
Federal Election Commission                           )
1050 First Street, NE                                 )
Washington, DC                                        )
*In his official capacity*                            )

**MARYLAND STATE BOARD OF**                           )
**ELECTIONS**                                         )
Jared DeMarinis                                       )
State Administrator                                   )
151 West Street, Suite 200                            )
Annapolis, MD 21401                                   )
*In his individual and official capacities*           )
)
**TEXAS SECRETARY OF STATE**              )
Elections Division                                    )
208 East 10th Street                                  )
Rusk Building Third Floor                             )
Austin, Texas                                         )
*In her individual and official capacities*           )
)
**ANN MARIE PAINTER[16]**                                )

---

[16]In 2019, Ms. Painter introduced the undersigned counsel to Judge Tonya Parker, who adopted the half brother of The Pardon attorney client, Brianna Baucum's daughter, Journi Baucum. It is noteworthy that freshman Congresswoman, Jasmine Crockett was also advocating for the return of Journi Baucum who was removed from Ms. Baucum's care only to be sexually abused. The undersigned counsel's minor son has met Ms. Crockett and subsequent to taking on Ms. Baucum's case, Ms. Allison has not seen her son since January 2022.

*Partner*                                                  )
Perkins Coie, LLP                                          )
Partner                                                    )
500 N. Akard Street Suite 3300                             )
Dallas, TX 75201                                           )
)
**COREY AMUNDSON**                                         )
Chief                                                      )
Public Integrity Section                                   )
U.S. Department of Justice                                 )
1301 New York Ave NW                                       )
Washington, DC 20530                                       )
*In his individual and official capacities*               )
)
**LEO WISE**                                               )
U.S. Attorney Public Integrity                                      )
 Unit Maryland                                             )
Main Justice Criminal Trial Attorney                       )
305 Thornhill Rd                                           )
Baltimore, MD 21212                                        )
*In his individual and official capacities*               )
*In her official and individual capacity*                          )

**10. Congress**

**COMMITTEE ON HOMELAND SECURITY**   )
Bennie Thompson                                            )
Chair, Committee on Homeland Security                      )
U.S. House of Representatives                              )
Rayburn House Office Building, 2466                        )
Washington, DC 20515                                       )
*In his official capacity*                                 )
)
**HOPE GOINS**                                             )
Staff Director                                             )
U.S. House of Representatives                              )
Committee on Homeland Security                             )
Rayburn House Office Building, 2466                        )
Washington, DC 20515                                       )
*In her individual and official capacities*               )
)
**HOUSE COMMITTEE ON THE JUDICIARY**   )
Subcommittee on the Weaponization of                       )
Federal Government                                         )
Chair, Jim Jordan House Committee on the Judiciary         )
United States House of Representatives                     )

17

2138 Rayburn House Building                                )
Washington, DC  20515                                      )
*In his official capacity only as it relates to*           )
*Mr. Ivey and Ms. Plaskett*                                )
                                                           )
**GLENN IVEY**                                             )
Congressman, Maryland District 4                           )
Democratic Member House Committee                          )
 on the Judiciary                                          )
2700 Valley Way                                            )
Cheverly, Maryland 20785                                   )
*In his individual and official capacities*                )
                                                           )
**HOUSE PERMANENT SELECT**                                 )
**COMMITTEE ON INTELLIGENCE**                              )
Chair, Mike Turner                                        )
United States House of Representatives                     )
2059 Rayburn House Office Building                              )
Washington, DC, 20515-5500                                     )
*In his official capacity as it*                           )
 *relates to Ms. Plaskett*                                     )
                                                           )
**STACEY E. PLASKETT**                                     )
Delegate to U.S. Congress, U.S. Virgin Islands             )
Democratic Member House Permanent Committee                )
 on National Intelligence                                  )
3107 W Place Southeast                                     )
Washington, D.C. 20020                                     )
*In her individual and official capacities*                )
                                                           )
**HOUSE COMMITTEE ON OVERSIGHT**                           )
**AND ACCOUNTABILITY**                                     )
James Comer                                                )
Chairman                                                   )
2157 Rayburn House Office Building                              )
Washington, DC 20515                                       )
*In his official capacity*                                     )
                                                           )
**JASMINE CROCKETT**                                       )
Democratic Member                                          )
House Committee on Oversight and Accountability            )
U.S. House of Representatives                               )
1616 Longworth House Office Building                       )
Washington, DC 20515                                       )
*In her individual and official capacities*                )
                                                           )
**HOUSE COMMITTEE ON ETHICS**                              )
Chair, Tom Rust                                            )

1015 Longworth House Office Building    )
 (LHOB),    )
Washington, DC  20515    )
*In his official capacity only as it relates to*    )
*Mr. Ivey, Ms. Plaskett, and Ms. Crockett*    )

---

**11. Bar Associations & Discipline**
)
**STATE BAR OF TEXAS**    )
Steve Benesh    )
President    )
P.O. Box 12487    )
Austin, TX 78711    )
*In his official capacity*    )
)
**TEXAS DISCIPLINARY COUNSEL**    )
Seana Willing    )
Chief, Disciplinary Counsel    )
Office of the Chief Disciplinary Counsel    )
State Bar of Texas    )
P.O. Box 12487    )
Austin, TX 78711    )
*In his official capacity*    )
)
**MARYLAND ATTORNEY**    )
**GREIVANCE COMMISSION**    )
Thomas M. DeGonia    )
Bar Counsel    )
200 Harry S. Truman Parkway    )
Annapolis, Maryland 21401    )
*In his independent and official capacity*    )
)
**THE FLORIDA BAR**    )
Jorge Luis Piedra    )
Chair    )
651 E Jefferson St    )
Tallahassee, FL 32399    )
*In his official capacity*    )

**BAR ASSOCIATION OF MONTGOMERY**
**COUNTY, MARYLAND**
Pilar C. Nichols
27 W Jefferson Street
Rockville, MD 20850
*In specific member's individual and*
*official capacities*

**J. FRANKLIN BOURNE**
**BAR ASSOCIATION**
Chandra Walker Holloway
P.O. BOX 1121
UPPER MARLBORO, MD 20772
*In specific member's individual and*
*official capacities*

**LYDIA LAWLESS**
Former Maryland Bar Counsel
209 Bates St NW
Washington, DC 20001
*In her individual capacity*

## 12. Taking of Property

**6009 OXON HILL, LLC**
7819 Norfolk, VA
Bethesda, MD

**SHULMAN, ROGERS, GANDAL**
**PORDY & ECKER, P.A.**
12505 Park Potomac Avenue
Potomac, MD 20854
*In his independent and official capacities*

**UHAUL INTERNATIONAL, INC**
3900 Whitetire Road
Landover, Maryland
CT Corporation System
Phoenix, Arizona

**JUSTICE FEDERAL CREDIT UNION**                    )
Mark L. Robnett                                      )
Chief Executive Officer                              )
145 N St NE                                          )
Washington, DC 20002                                 )
)
**THE NATIONAL CREDIT UNION**                        )
**ADMINISTRATION**                                   )
Larry Fazio                                          )
Executive Director                                   )
1775 Duke Street                                     )
Alexandria, VA 22314                                 )
*In his individual and official capacities*          )

---

**13. Inaccurate Records**

**GARY GENSLER**                                     )
Chair, U.S. Securities and                           )
Exchange Commission                                  )
100 F St NE,                                          )
Washington, DC 20549                                 )
*In his official capacity*

**U.S. DEPARTMENT OF STATE** )
Antony J. Blinken )
Secretary )
2201 C Street, NW )
Washington, D.C. 20520 )
*In her individual and official capacities* )
)
**U.S. DEPARTMENT OF TREASURY** )
Janet Yellen )
Secretary )
1500 Pennsylvania Avenue, NW )
Washington, DC 20220 )
*In her official capacity* )
)
**U.S. DEPARTMENT OF LABOR** )
Portia Wu )
Director )
200 Constitution Ave NW )
Washington, DC 20210 )
*In her official capacity* )
)
**FEDERAL EMPLOYEE BLUE** )
**CROSS BLUE SHIELD** )
750 9th St. NW )
Washington, DC 20001 )
)
**U.S. DEPARTMENT OF HOUSING** )
**AND URBAN DEVELOPMENT** )
Adrianne Todman )
Acting Secretary )
451 7th Street S.W. )
Washington, DC 20410 )
*In her individual and official capacities* )
)
**SOCIAL SECURITY ADMINISTRATION** )
Commissioner Martin O'Malley )
2041 Martin Luther King Jr Ave SE #130 )
Washington, DC 20020 )
*In his individual and official capacities* )
)
**U.S. OFFICE FOR PERSONNEL** )
**MANAGEMENT** )
Rob Shriver )
Acting Director )
1900 E Street, NW )

Washington, DC 20415-1000                                   )
*In his individual and official capacities*                 **)**
**)**
**THE INTERNAL REVENUE SERVICE )**
Daniel Werfel                                               )
US Commissioner of Internal Revenue                         )
1111 Constitution Avenue Northwest                          )
Washington, District of Columbia                            )
*In his individual and official capacities*                 )
)
**U.S. DRUG ENFORCEMENT**                                   **)**
**ADMINISTRATION**                                          **)**
Anne Milgram                                                )
Administrator                                               )
600 Army Navy Dr                                            )
Arlington, VA 22202                                         )
*In her individual and official capacities*                 )
)
**U.S. POSTAL INSPECTION SERVICE**                          **)**
Gary R. Barksdale                                           )
Chief Postal Inspector                                      )
1735 North Lynn Street                                      )
Arlington, VA 22209                                         )
*In his individual and official capacities*
)
**U.S. DEPARTMENT OF HEALTH**                               **)**
**AND HUMAN SERVICES**                                      **)**
Xavier Becerra                                              )
200 Independence Avenue, S.W.                               )
Washington, D.C. 20201                                      )
*In his individual and official capacities*                 )
)
**U.S. DEPARTMENT OF EDUCATION**                            **)**
Dr. Miguel A. Cardona                                       )
Secretary                                                   )
U.S. Department of Education                                )
400 Maryland Avenue, SW                                     )

Washington, D.C. 20202                                    )
*In his individual and official capacities*               )

---

**PLAINTIFFS' COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND
AFFIRMATIVE RELIEF FROM FEDERAL EMPLOYMENT LAW RETALIATION
RESULTING IN FOREIGN INTELLIGENCE SURVEILLANCE ACT WARRANTS
AND VIOLATIONS OF MINIMIZATION PROCEDURES, THE NO FEAR ACT, & THE
WHISTLEBLOWER PROTECTION ACT**

---

This lawsuit challenges the constitutionality of a federal employee and whistleblower having the Foreign Intelligence Surveillance Act (FISA) on its face and as applied to her where there are constitutional defects at odds with the statutory provisions of the Whistleblower Protection Act and No Fear Act. FISA's Patriot Act allows for the warrantless surveillance and access to four major areas of a U.S. Citizen or Persons life: ***taxes, banking, social media, and medical records***. As a result, FISA's Foreign Intelligence Surveillance Court, where the nondelegation doctrine of the vesting clause is violated, resulting in Ms. Allison, her husband, minor child and clients of one of only three expert presidential pardon law firm's being denied their most basic human rights including having their property seized, privacy rights violated, passports seized, their right to access the courts, parent, be married, have housing, access healthcare, run their businesses, have their name, dignity, and honor; possess firearms; vote; be free from detainment; be free from wrongful arrest; and more violated by the U.S. Department of Justice's years' long employment law retaliation against Ms. Allison. FISC is unconstitutional facially and as applied, especially in the context of employment law.

On December 13, 2023, Ms. Allison received a response to her Freedom of Information Act Requests indicating that FBI had records on her dating back to 2018 when she was still

employed by DOJ.



On March 8, 2024, Office of the Director for National Intelligence (ODNI) responded to Ms. Allison's Freedom of Information Act request that they have records on her dating back to a time period when she was still employed by the U.S. Department of Justice, with what appears to be 13 Foreign Intelligence Surveillance Act (FISA) warrants in the possession in the Office of

the Deputy Attorney General (ODAG).



Both FBI and ODNI have not produced ANY records in violation of federal law. *See:*

https://www.justice.gov/archives/open/responding-requests

**HISTORY**

Tammy Allison Holloway (hereinafter referred to as "Ms. Allison[2]" or "Plaintiff"), is the sole managing attorney of The Pardon Attorney law firm and sole managing member of Own Your Passion talent management and consulting, but is unable to reach her own minor child, husband, family, friends or clients as a former employee of the U.S. Department of Justice ("DOJ") between 2008 and 2020, with positions at the Office of the Pardon Attorney ("OPA"), Federal Bureau of Prisons ("BOP"), and the Executive Office of U.S. Attorneys ("EOUSA"), Justice Management Division ("JMD").

   **I.   MS. ALLISON'S DOCUMENTS APPEAR WITH DR. CARTER PAGE'S**

## RESPONSIVE RECORDS

### DOJ WEBSITE       MS. ALLISON'S PERSONAL EMAILS



*See:* https://www.justice.gov/oip/foia-library/general_topics/correspondence_rod_rosentein_06_25_20/dl pages 3-6 or *see:*

https://www.documentcloud.org/documents/20537671-doj-calendars-for-gene-hamilton-and-other-senior-staff-officials-part-3

## UNDERSIGNED COUNSEL'S WORK EXPERIENCE

- **Attorney Tammy Allison, PLLC,** Sole Managing Attorney, Established November 6, 2019; launched November 1, 2020, through present (*pro se* only with U.S. Department of Justice, approval January 17, 2018)

- **Own Your Passion, LLC**, Sole Managing Member, Established November 6, 2019; launched January 8, 2020, through present (U.S. Department of Justice, approval January 8, 2020)

- **U.S. House of Representatives Texas District 6,** Candidate, March through May 2021



*See*: https://ballotpedia.org/Texas%27_6th_Congressional_District

- **U.S. House of Representatives Maryland District 4,** Candidate, March through July 2022



*See*: https://ballotpedia.org/Maryland%27s_4th_Congressional_District_election,_2022

- **Administrative Office of Maryland Courts:** Employee, Nominee, and Applicant

- o Judicial Law Clerk to Magistrate Robert Bloom at the Circuit Court for Baltimore City 2009-2010
- o Nominee for Judge District and Circuit Court for Montgomery County, Maryland - 2017
- o Applicant for Magistrate Judge District Court for Montgomery County-2017
- o Applicant, Assistant State's Attorney for Montgomery County, Maryland
- o Applicant, Assistant County Attorney, August 23, 2016
- o Applicant, Special Magistrate/ADR, April 29, 2015
- o Applicant, Maryland Elections
- o Applicant, Attorney Grievance Commission

- **U.S. Department of Justice Attorney**, Employee, Interviewee, Applicant

  - o The Office of the Pardon Attorney, Attorney-Advisor, 2010-2017 (Extern: Fall 2008 | Spring 2009: Temporary Appointed Legal Assistant)
  - o U.S. Attorney's Office for Washington, D.C., Special Assistant United States Attorney, 2015-2017
  - o The U.S. Federal Bureau of Prisons, Assistant General Counsel, 2017-2020
  - o Applicant, Office of the Attorney General
  - o Applicant, Office of the Deputy Attorney General
  - o Applicant, U.S. Attorney's Office for Maryland, June 8, 2015, August 30, 2017
  - o Applicant, U.S. Attorney's Office for Texas-Southern District
  - o Applicant, Office of Attorney Recruitment and Management, February 24, 2016
  - o Applicant, Justice Management Division, April 13, 2015, Michelle Allen* (conflict)
  - o Applicant, Office of Legal Policy
  - o Applicant, Defense Intelligence Agency, November 15, 2016, March 20, 2017
  - o Applicant, Homeland Security Headquarters, Traci Silas (conflict) 2017
  - o Applicant and Interviewee, Shulman Rogers 2017
  - o Applicant, Office of Personnel Management, May 7, 2015, July 12, 2016
  - o Applicant, Office of Inspector General, November 7, 2016
  - o Applicant, Executive Office for U.S. Attorney, September 8, 2016
  - o Applicant, Equal Employment Opportunity Commission
  - o Applicant Foreign Intelligence Surveillance Court, May 24, 2017

## II.  RECENT FILING

1. Following a string of harsh and targeted harrassment against Ms, Allison, she timely filed an emplyment lawsuit against BOP on January 25, 2024.  Immediately Ms. Allison was removed from the website at the U.S. District Court for D.C. as the court intentionally blocked her access to the court in the matter of *Tammy Allison Holloway v. Merrick Garland*, et. al. 1:24-

cv-00259-BAH. The assigned Judge, Beryl Howell, has not issued a scheduling order in direct violation of her duties as a federal judge. Instead, she has voluntarily participated in the abusive harassment of Ms. Allison, without any regard to her, her husband, minor child, or client's life, liberty, or property interests. A judicial complaint filed by revealed Judge Howell's close relationship with DAG's Lisa Monaco[17].

The 2017 settlement agreement with the Office of the Pardon Attorney[18] should be vacated because it was signed under duress, while DOJ was conducting retaliatory surveillance, and is devoid of the requisite mandatory language. EEOC Case No. 570-2015-01009X, Agency Case No. OBD-2015-000023. BOP's Final Agency Decision in BOP-2020-0118, should similarly be vacated because BOP's findings by the agency were not based on the merits of each issue in the complaint and, when discrimination is found, appropriate remedies and relief are required. At all times, Ms. Allison was under retaliatory surveillance where the information was used without requisite disclosures.

Each administrative complaint is to be reinstated for further processing from the point processing ceased. On September 18, 2024, an appeal for reconsideration was filed with EEOC, appeal number 2024001744. Instead of filing an appeal or request for reconsideration, the complainant may file a civil action in federal district court; and filing a civil action terminates Commission processing of an appeal. *See* 29 C.F.R. § 1614.409.

Pursuant to the Equal Employment Opportunity Commission regulations, 29 C.F.R. 1614.107(a)(3), the Agency is required to dismiss Ms. Allison's appeal as this court now has jurisdiction over the discrimination complaints Ms. Allison filed based on harassment that she

---

[17]*See*: https://www.nbcnews.com/politics/congress/elise-stefanik-files-complaint-judge-ruled-jan-6-trump-cases-rcna129878 and https://judiciary.house.gov/sites/evo-subsites/republicans-judiciary.house.gov/files/evo-media-document/2024-05-20%20JDJ%20Stefanik%20to%20Srinivasan%20re%20handling%20of%20complaint.pdf
[18] https://storage.googleapis.com/msgsndr/7SMarDC7BRap5Jllw3d7/media/65c114de01999b36ab1a9956.pdf

experienced, hostile work environment, disparate treatment, unequal terms and conditions of employment, and reprisal based on her race/color (dark skinned African-American), national origin (Nigerian-American), sex (female), parental status (single mother), disability (mental/anxiety), reprisal (prior protected activities), and constructive discharge.

ODAG, the Maryland Courts, and the federal judiciary have a history of inappropriate *ex parte* communications.

(b)(6) Lisa Einsel, US Courts

| | |
|---|---|
| **From:** | (b)(6) Lisa Einsel, US Courts |
| **Sent:** | Thursday, May 18, 2017 2:17 PM |
| **To:** | Rosenstein, Rod (USAMD) |
| **Subject:** | Another name |

Rod,

I don't know how far you have gotten, but another name you might consider with bipartisan credentials and relevant experience is (b)(6) .

Larry Silberman

## III. DUE PROCESS

1. Unbeknownst to Ms. Allison, the U.S. Department of Justice's ("DOJ") abused its power by referring Ms. Allison to the intelligence community during an employment law matter, months after she gave birth to her only child in 2014. DOJ's longest serving attorney, David Margolis, forced Ms. Allison to have mediation at the Federal Bureau of Investigations ("FBI") headquarters on December 9, 2014.  Unbeknownst to her, at all times since at least December 9, 2014, she has remained under retaliatory surveillance,  where the government has interfered in

31

every aspect of her life.

2. "Due process is available for the whistleblower, the employee who belongs to the 'wrong' political party, the reservist whose periods of military service are inconvenient to the boss, the scapegoat, and the person who has been misjudged based on faulty information,[19]" Debra Roth, general counsel for the Senior Executives Association, wrote in a cover letter to a report. "Due process is a constitutional requirement and a small price to pay to ensure the American people receive a merit based civil service rather than a corrupt spoils system." *Id.*

3. The interactions between the U.S. Constitution and adverse personnel actions in a merit-based civil service suggests that due process is required as it extents to Title VII matters. In the Civil Service Reform Act of 1978 (CSRA), Congress sought to ensure that agencies could remove poor performers and employees who engage in misconduct, while protecting the civil service from the harmful effects of management acting for improper reasons such as

---

[19]https://www.washingtonpost.com/news/federal-eye/wp/2015/05/12/due-process-for-feds-protects-against-spoils-system-report-says/

discrimination or retaliation for whistleblowing.

4. Ms. Allison recently discovered that she is the subject of Foreign Intelligence Surveillance Act (FISA) warrants; where there are clear constitutional defects at odds with the statutory provisions of the Whistleblower Protection Act.  Specifically, the no-gag language contained in the warrants, the Foreign Intelligence Surveillance Act Courts, as well as national security letters utilized to carry out intelligence gathering on targets through private businesses.

5. It is clear that Congress exceeded its authority pursuant to the appropriations and supremacy clause with the creation of the Foreign Intelligence Surveillance Court where the nondelegation doctrine of the vesting clause is violated.  DOJ's "secret" Office of Legal Counsel Memorandum "rule making" is odds with the Whistleblower Protection Act and No Fear Act.

## IV.  NOTICE

### 1. Referred as Insider Threat[20]

6. It appears as though Ms. Allison was referred as an insider threat, but she was never informed of any unfounded misconduct allegations against her; let alone the fact that she has been under surveillance, in violation of Presidential Executive Order 13587; which requires **informing employees, subject to monitoring, of the policies and processes in place to protect their privacy, civil rights, and civil liberties rights against unnecessary monitoring (to include retaliation against whistleblowers)**.[21]  This applies to legal, privacy, and whistleblower protection laws, including when departments and agencies agree to exchange insider threat

---

[20] *See:* https://www.dni.gov/files/NCSC/documents/nittf/National Insider Threat Policy.pdf.
[21] *See*: www.dni.gov/files/NCSC/documents/nittf/National_Insider_Threat_Policy.pdf

information among one another.[22]

7. Section 106(c) of the Foreign Intelligence Surveillance Act ("FISA"), Section 106(c) 50 U.S.C. § 1806(c) (2006), requires the government to notify an "aggrieved person"—that is, a person who was the target of electronic surveillance or whose communications or activities were subject to electronic surveillance, *see id.* § 1801(k)—whenever the government intends to use "against" that person any information "obtained or derived from [such] electronic surveillance of that aggrieved person" in any "trial, hearing, or other proceeding in or before any court[23], department, officer, agency, regulatory body, or other authority of the United States."

**FISA-related materials containing exculpatory evidence or evidence tending to impeach a government witness would need to be disclosed under this provision and under the Constitution. *See Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963).**

## PRIVILEGES WAIVED

8. The government must assert jurisdictional arguments and privileges; or like in any other circumstance it is waived. *See United States v. Menesses*, 962 F.2d 420, 425–26 (5th Cir. 1992) (holding that a litigant waived an argument by failing to brief the issue, instead raising it for the first time at oral argument). Despite having access to and using information from Plaintiffs' confidential and privileged communications, at no point has any litigant disclosed their reliance on surveillance material. At least one court has noted that the government conflates the public interest with its own position. *Al-Marri v. Bush*, No. 04-2035, 2005 U.S. Dist. LEXIS 6259, at *20 (D.D.C. Apr. 4, 2005) (*citing Abdah v. Bush*, No. 04-CV-1245, 2005

---

[22] *See*: National Insider Threat Task Force, *Insider Threat Program: Maturity Framework*, at 3,
[23] *See*: https://www.rcfp.org/open-court-sections/a-the-roots-of-access-rights/

U.S. Dist. LEXIS 4144 (D.D.C. Mar. 12, 2005)).  In certain instances, Title III courts can refuse to hear a matter when actual matters of national security are involved. Here, this is a matter of employment law retaliation. There are no threats to national security, and if there were, Defendants would need to explain how they allowed a senior attorney to remain employed if she were a threat.

## V. CARETAKERS, FAMILY, FRIENDS, AND CLIENTS HAVE THEIR OWN CAUSE OF ACTION
### A. Americans with Disabilities Act Caretakers

9. Caregivers of individuals with disabilities are protected under the ADA as well, specifically in the employment context. Under the ADA, an employer is required to provide reasonable accommodation to employees with disabilities, and this includes accommodation for caregivers.

10. Under the "association" provision of title I of the ADA. The association provision prohibits discrimination based on a known relationship or association of an applicant or employee with an individual with a disability – such as a child, spouse, or other family member. The association provision is meant to prevent employers from taking adverse employment actions against an applicant or employee on the basis of stereotypes and assumptions about individuals who associate with people who have disabilities.

11. People caring for loved ones with disabilities may also be subject to caregiver discrimination. Those workers are protected under the "associational discrimination" provision under the Americans with Disabilities Act of 1990 (ADA) and the ADA Amendments Act of 2008 (ADAAA).

12. Mr. Young is Ms. Allison's husband and caretaker who Defendants have unconstitutionally and unlawfully separated for over two years.  They have also refused to provide

him with access to Ms. Allison's worker's compensation, social security, and retirement payout.

### B. Non-Employees (Family, Colleagues, Friends, and Clients) Have Their Own Cause of Action.[24]

13. The EEOC's 2016 Enforcement Guidance on Retaliation and Related Issues adopts this approach[25]. According to the EEOC, the third party would also fall within the zone of interests sought to be protected by Title VII and would qualify as an aggrieved person. *Id.*

14. Both the employee who engaged in the protected activity and the third party who is subjected to the materially adverse action may state a claim. Claiming to be aggrieved persons under the logic of *Thompson*[26], the affected friend, family member, or client may file their own retaliation claim against the employer under Title VII.

## VI. PROXY LIABITY/DOJ NEGLIGENCE

15. Non-supervisory Employees (E.g., Coworkers) and Non-employees – Negligence *See*: *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The Court in *Vance* stressed that Plaintiffs could "prevail simply by showing that the employer was negligent in permitting... harassment to occur." *Id.* at 445; *see also id.* at 448-49 (explaining that an employee can establish employer liability for nonsupervisory harassment "by showing that his or her employer was negligent in failing to prevent harassment from taking place").

16. An employer is liable for a hostile work environment created by non-supervisory employees or by non-employees if it was negligent because:

- it unreasonably failed to prevent the harassment;

---

[24] *See*: EEOC, Enforcement Guidance on Retaliation and Related Issues (Aug. 25, 2016), https://perma.cc/2LTJ-EHJY

[25] *See*: https://scholarlycommons.law.emory.edu/cgi/viewcontent.cgi?article=1486&context=elj

[26] *See: Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011).

OR

- it failed to take reasonable corrective action in response to harassment about which it knew or should have known.

17. Although the negligence standard is principally applied in cases involving harassment by a non-supervisory employee or non-employee, it also can be applied in cases involving harassment by a supervisor or alter ego/proxy. *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The Court in *Vance* stressed that Ms. Allison could "prevail simply by showing that the employer was negligent in permitting... harassment to occur." *Id.* at 445; *see also id.* at 448-49 (explaining that an employee can establish employer liability for nonsupervisory harassment "by showing that his or her employer was negligent in failing to prevent harassment from taking place").

### A. Automatic Liability

18. In the context of Title VII employment law, "proxy theory" of liability under Title VII of the Civil Rights Act imputes automatic liability on employers based on who the alleged harasser is. *O'Brien v. The Middle E. Forum*, 57 F.4th 110. Claims of harassment against those who are so integrated with the employer that they themselves are tantamount to the entity. *Id.* The U.S. Department of Justice will not be able to rely on any affirmative defense because Ms. Allison repeatedly reported the harassment of Defendants to the agency. *See*: *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998).

## VII.  ADDITIONAL CLAIMS

19. The U.S. Supreme Court's decision in *Department of the Navy v. Egan*, 484 U.S. 518 (1988), and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., provides that Plaintiffs can bring a claims of employment law discrimination **in addition to other provisions of federal law to redress the same basic injury**," *Ethnic Employees of the Library of Congress v. Boorstin*, 751 F.2d 1405, 1415 (D.C. Cir. 1985) (discussing *Brown*), and in *Ryan*, we held that "under *Egan* an adverse employment action based on denial or evidence in the light most favorable to the plaintiff, a reasonable jury could find the action materially adverse. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 607 (D.C. Cir. 2010). Given that DOJ's referral may qualifies as a materially adverse action and that such an action falls outside *Egan*, Plaintiffs' claims of reprisal focus on retaliatory animus such as selective prosecution, falsification and tampering with documents, witness intimidation, improper disclosures, defamation, privacy rights violations, failure to comply with FOIA and MPIA on behalf of Plaintiffs.

## VIII.  RELIEF REQUESTED

20. Plaintiffs seek declaratory relief; injunctive relief; affirmative relief pursuant to the Mandamus Act, *See* 28 U.S.C. § 1361 and the Administrative Procedures Act 28 U.S.C. § 1331, which provides a federal court with jurisdiction over federal questions facially and as applied; relief for violations of their rights secured through Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.; 42 U.S.C. § 12182 *et. seq.*; 29 CFR § 1614.106 and § 1614.204; Sections 501 and 505 of the Rehabilitation Act of 1973, Titles I, II, III and V of the Americans with Disabilities Act ("ADA"), Disability-based discrimination in employment is governed by the definitions and regulatory standards of title I of the ADA, 28 C.F.R. § 35.140; 42 U.S.C. § 12101 *et seq.*; Employee Retirement Income Security Act, 29 U.S.C. § 1132; Fair Housing Act (Title VII), 42 U.S.C. § 3601 & 3602; Civil Rights Act, 52 U.S.C. § 10101, and Voting Rights Act, 52

U.S.C. § 10301; Family Medical Leave Act, 29 U.S.C. § 2601; 42 U.S.C. § 40529; C.F.R. pt. 1630; the Civil Rights Act of 1991; Title VI of the Civil Rights Acts of 1964, 42 U.S.C. §§2000d – 2000d7 and the nondiscrimination section of the Omnibus Crime Control and Safe Streets Act of 1968, 28 U.S.C.§ 3789d(c); The First Amendment of the U.S. Constitution; 28 U.S.C. § 1331, as applied and specifically as applied to Plaintiff related to The Kline - District of Columbia and Maryland - Stock and Land Fraud Interrelationship Filing System, because of discrimination in the terms and conditions of her employment with the Office of the Pardon Attorney ("OPA"), the Executive Office of United States Attorneys ("EOUSA"), the Justice Management Division ("JMD"), the Federal Bureau of Prisons ("BOP"), U.S. Attorney's Office for D.C. ("USA-DC"), U.S. Attorney's Office for Maryland ("USAM") each components of the U.S. Department of Justice ("DOJ"), and the Administrative Office of the Maryland Courts ("AOCM"), as a former employee and applicant; the Administrative Office of the U.S. Courts ("AOC")/Foreign Intelligence Surveillance Court ("FISC"), the Executive Office of the President ("EOP"),  based on her disability, race, color, national origin, parental status, sex, and retaliation for engaging in prior protected activity. Plaintiffs seek declaratory and injunctive relief for the violations of the Foreign Intelligence Surveillance Act ("FISA") §2521; violations of the Whistleblower Protection Act ("WPA") of 1989, 5 U.S.C. 2302-, Pub.L. 101-12, Civil Service Reform Act ("CSRA") of 1978, Pub. L 95-454 (S 2640), violations of the Notification and Federal Employee Antidiscrimination and Retaliation Act ("No Fear Act") of 2002, P.L. 107-174; The Equal Access to Justice Act (EAJA) of 1980; violations of 42 U.S.C. §§ 2000d – 2000d7; violations of the Torture Victim Protection Act of 1991; the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"); violations of Employee Retirement Income Security Act of 1974 (ERISA); violations of Federal Employees' Compensation Act

(FECA); violations of civil, administrative, and/or criminal forfeitures; violations of the Freedom of Information Act ("FOIA") pursuant to 5 U.S.C. § 552(a)(4)(B) and Maryland Public Information Act, Md. Code Ann., State Gov't § 10-611 et seq.; violations of the take care clause, define and punish clause, appropriations clause, and violations of a number of constitutional rights of Plaintiffs. Plaintiffs seek affirmative, declaratoty, and injunctive relief declaring the <u>Maryland Wiretap Act</u>, Cts. & Jud. Proc. § 10-401 et seq. (2006), unconstitutional on its face and as applied.

Plaintiffs seek damages, both compensatory and punitive, affirmative, and equitable relief, an award of costs and attorney's fees, and such other and further relief, as this Court deems just and equitable.

## IX. JURISDICTION

21. This Court has jurisdiction over the action under 42 U.S.C. §§ 2000e-5(f) and 2000e-6(a); 28 U.S.C. §§ 1331, 1343(3), and 1345; and 5 U.S. Code § 1221.

22. Plaintiffs' claim for declaratory and injunctive relief is authorized by 28 U.S.C. §2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

23. Plaintiffs have jurisdiction under 28 U.S.C. § 1361 and 5 U.S.C. § 551 et seq., which seeks to prohibit improper action or inaction.

24. This Court has pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 USC § 1367.

25. There is Federal jurisdiction over an offense under 18 U.S. Code § 2712;5 U.S.C. § 552a(g)(1)(C) or (D); 50 U.S.C. § 1810; 50 U.S.C. § 1828; 50 U.S. Code § 1827; 50 U.S.C. §§ 1806(a), 1825(a), or 1845(a).

26. This Court has personal jurisdiction over Members Ivey and Crockett; as well as Delegate Plaskett and the Committee under CPLR § 302 because they "engage[d] in [a] persistent

course of conduct" and "expect[ed] or should reasonably expect the act to have consequences in the state."

## X. VENUE

27. Venue is proper in the United States District Court for D.C., pursuant to 29 U.S.C. §621 et seq., and 28 U.S.C. §§1391 (a), (b) and (c), because Defendants maintain a place of business in this judicial district and a substantial part of the events giving rise to this action took place in the district. Venue is also appropriate for Plaintiffs' return of property claims pursuant to Criminal Rules of Procedure Rule 41(g) provision that "[t]he motion must be filed in the district where the property was seized."

### A. TRANSFER JURISDICTION AND/OR VENUE

28. The courts in other jurisdictions have not taken judicial notice of Ms. Allison's knowledge, skills, and abilities and continue to gaslight her as if she did not successfully litigate at the federal level on behalf of DOJ. To prevent having to respond to *sua sponte* dismissals and/or orders inconsistent with the Federal Rules of Civil Procedure, the undersigned counsel reminds all parties and this honorable court about the duty to transfer. Where a court lacks venue or personal jurisdiction to hear a case, it may transfer the action to "any other such court . . . in which the action . . . could have been brought" where doing so "is in the interest of justice." 28 U.S.C. § 1631; *see also id.* § 1406(a) (venue).

## XI. PARTIES

29. Plaintiff, The Pardon Attorney is doing business as Attorney Tammy Allison, PLLC, a Texas Professional Limited Liability Company, established on November 6, 2019, where Ms.

Allison[27] is the sole managing attorney, and at times operates as a Texas sole proprietorship,

allowing for standing.  *See*: https://www.thepardonattorney.com/

30. Plaintiff, Own Your Passion, LLC is a Texas Limited Liability Company, established

on November 6, 2019, where Ms. Allison is the sole managing member.

31. Plaintiff, Tammy for Texas, Texas District 6, ID: H2TX06277, *Closed*, 2021, was the

Congressional Committee registered with the Federal Election Commission where Ms. Allison

was the candidate for the U.S. House of Representatives.

32. Plaintiff, Tammy for You, Maryland District 4, ID: H2MD04364, *Closed*, 2022, was

the Congressional Committee registered with the Federal Election Commission where Ms.

Allison was the candidate for the U.S. House of Representatives.

33. Ms. Allison[62] is a a former U.S. Department of Justice employee, who resigned from

federal service on October 30, 2020. Ms. Allison has a permanent disability, including anxiety.

---

[27]*See*: Ms. Allison and her minor child relocated to Dallas, Texas, in December 2018, where Defendants maintain an office in Grand Prairie, Texas.

Ms. Allison is an individual with a permanent disability, including anxiety. Plaintiff's permanent disability, which severely impacts her major life activities, has symptoms which cause sudden onsets of migraines, to which she has a documented history of seeing a neurologist and undergoing numerous tests to rule out any other causes besides anxiety; severe abdominal pain, nausea, vomiting, and other gastrointestinal issues to which she has a documented history of seeing a gastroenterologist, undergoing colonoscopies, having polyps surgically removed, and undergoing numerous tests to rule out any other causes besides anxiety; gynecological issues, including amenorrhea, menorrhagia, miscarriage, endometritis, adenomyosis with sciatica, anemia to which she has a documented history of seeing a gynecologist, undergoing pap smears , having pre-cancerous cells removed, her thickened uterine lining removed, polyps removed, and undergoing numerous tests to rule out any other causes besides anxiety; and cardiovascular issues such as abnormal EKGs, heart murmurs, high blood pressure, and cardiomyopathy to which she has a documented history of seeing a cardiologist and undergoing numerous tests to rule out any other causes besides anxiety all of which substantially limit Plaintiff's major life activities. Defendants have been aware of Plaintiff's disability based on her informing them verbally and in writing; Plaintiff has had to produce numerous medical documents related to her February 2020 workplace injury—anxiety; as well as numerous medical documents for a reasonable accommodation request that was never given dating back to her previous protected activities in EEOC case number 570-2015-01009X. Plaintiff is a citizen and resident of the United States, is a former resident of Baltimore County, Maryland, Prince George's County, Maryland, the State of Texas, and recently returned to reside in Prince George's County, Maryland in the Spring of 2022.

Plaintiff's permanent disability, which severely impacts her major life activities, has symptoms which cause sudden onsets of migraines, to which she has a documented history of seeing a neurologist and undergoing numerous tests to rule out any other causes besides anxiety; severe abdominal pain, nausea, vomiting, and other gastrointestinal issues and more.

34. Plaintiff, Nudal, LLC is a Texas Limited Liability Company, established on November 6, 2019, where Mr. Young is the sole managing member.  Nudal, LLC, is a consulting business that served as the Campaign Director for Tammy For You, Maryland District 4, was the contract law firm manager for The Pardon Attorney, was Own You Passion, LLC's manager, talent agent, location scouter, production manager, stylist and content creator for all of Ms. Allison's brands and businesses.

35. Plaintiff Caleb Young is Ms. Allison's second husband who has been on a non-disclosure, non-compete, non-disparagement agreement with Ms. Allison since February 2021.

36. Plaintiff, Jesus Gregorio Macias-Munoz, is a former clemency applicant and incarcerated individual serving two life sentences at the United States Penitentiary Yazoo City in Yazoo, City, Mississippi.  His Reg Number is: 62259-080.  The undersigned counsel is the attorney of record appearing, *pro hac vice*, in the Western District of Texas El Paso Division before the Honorable Senior Judge Briones in the matter of the *United v. Gaytan et al.*, (Jesus Gregorio Macias-Munoz) No. 3:92-cr-00132-DB-1 (W.D. Tex. 1992).

37. Plaintiff Bubacarr Tunkara, is a stateless individual from Gambia. He has been a client of The Pardon Attorney since 2022.

38. Plaintiff Arash Golshani, is a lawful permanent resident and former applicant for clemency. He has been a client of the Pardon Attorney since 2023.

39. Plaintiff, Don Bethel, is an individual with a conviction and lawful permanent resident, who has been a client of The Pardon Attorney since 2024.

40. Plaintiff Rhonda Lopez is an individual with a conviction and client of The Pardon Attorney since 2021.

41. Plaintiff Nadia Haider is a lawful permanent resident and has been a client of The Pardon Attorney since 2022.

42. Plaintiff Raymundo Jasso, is a client of The Pardon Attorney, incarcerated at the Texas Department of Criminal Justice.  Plaintiff Raymundo Jasso is a client of The Pardon Attorney and is entitled to his property, Case No. 2010CRN000296D4 (WEBB COUNTY); SID Number: 02989229; TDCJ Number: 01738744

43. Plaintiff Allister Holmes, is a client of The Pardon Attorney since 2022, formerly incarcerated at the Texas Department of Criminal Justice.

44. Plaintiff Jamone Banks is a formerly incarcerated individual who erroneously received clemency by the Commonwealth of Virginia in violation of federal law and a client of The Pardon Attorney since 2021.

45. Plaintiff Matthew Thomas is an individual with a conviction and client of The Pardon Attorney since 2023.

46. Plaintiffs Daryl and Charlene Lawton are the parents of an incarcerated individual and clients of The Pardon Attorney since 2023.

47. Plaintiff Money Train, LLC is a former client of Own Your Passion, LLC since 2020.

48. Plaintiff Cedric Dormaine Hill better known by his stage name E.S.G. is an American rapper from Houston, Texas, and is a member of the Screwed Up Click, former client of Own Your Passion, LLC since 2020, and assisted Ms. Allison with conceptualizing The Pardon

Attorney, with discussions of clearing the use of one of his copyrights to be used in the firm's marketing.

49. Plaintiff Surajudeen Seriki is the owner of Midland Accounting and Tax Service in Houston, Texas, a tax consultant for Ms. Allison and her late mother, Boma Allison, and is the father of Houston rapper, Hakeem Temidayo Seriki, better known by his stage name Chamillionaire.

50. Plaintiff Charles Holder was consulted by The Pardon Attorney in 2020 and is incarcerated at the Texas Department of Criminal Justice. He is the brother of Houston rapper Frazier Othel Thompson III, better known by his stage name Trae the Truth.

51. Plaintiff The Estate of Dr. Matulu Shakur was consulted by The Pardon Attorney in 2020, regarding a denied motion for compassionate release for Dr. Matulu Shakur. Dr. Shakur was the stepfather of the late rapper Tupac Shakur.

52. Plaintiff James "Jimmy Henchman" Rosemond was consulted by The Pardon Attorney in 2022, through his daughter and son-in-law, professional boxer, Zab and DeeDee Judah; Mr. Rosemond has been alleged to have ties to the death of the late rapper, Tupac Shakur.

53. Plaintiff Frank Amadeo is an incarcerated individual with the Federal Bureau of Prisons and a client of The Pardon Attorney since 2022.

54. Plaintiff Tiffani Dior Forbes is an individual with a conviction and client of The Pardon Attorney since 2023.

55. Plaintiff Warren Charlton is an incarcerated individual with the Federal Bureau of Prisons and a client of The Pardon Attorney since 2022.

56. Matthew Brunstrum is an individual with a conviction and a client of The Pardon

Attorney since 2023.

57.  Jeffrey Mathis is an incarcerated individual with the Federal Bureau of Prisons and a client of The Pardon Attorney since 2022.

58. Donovan Strickland, Steve T. Corbin, Jeffri Davila-Reyes, Sam Hurd are next of friends.

**NEXT FRIEND VERIFICATION**

59. Under Article III of the Constitution, a federal court cannot consider the merits of a claim until the party seeking to invoke the jurisdiction of the court can establish the requisite standing to sue. *Whitmore v. Arkansas,* 495 U.S. 149, 154 (1990). In order to do so, a plaintiff "must show that he has suffered an injury in fact that is fairly traceable to the challenged action of the defendant, and that is likely to be redressed by a favorable decision." *Hamdi v. Rumsfeld*, 294 F.3d 598, 602 (4th Cir. 2002) (citing *Whitmore*, 495 U.S. at 155) (other citations omitted).

60. Recognizing that some individuals may be unable to seek judicial relief on their own, however, the Supreme Court held in *Whitmore v. Arkansas*, 495 U.S. at 161–62, that a person who does not satisfy Article III's standing requirements may still proceed in federal court through a mechanism known as "next friend" standing. Next friend standing originated in the habeas corpus context and is codified in the federal habeas statute. *See* 28 U.S.C. § 2242 ("Application for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf."). The onus is on the putative next friend to establish the requirements for standing. *Whitmore*, 495 U.S. at 164.

61. Whitmore established two requirements for next friend standing. First, the next friend must provide "an adequate explanation—such as inaccessibility,  mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf to prosecute the

action." *Id.* at 163 (citations omitted). Second, the next friend must demonstrate that it is "truly dedicated to the best interests of the person on whose behalf [it] seeks to litigate." *Id*

62. On behalf of Donovan Strickland, Steven T. Corbin, and Jeffri Davila- Reyes the undersigned counsel verifies that she is acting on their behalf.  While Ms. Allison has standing to access the courts, Mr. Strickland has been improperly incarcerated after Defendants Mr. Ivey and Mr. Maloney falsified a guilty plea and a jury acquitted Mr. Strickland of murder, and then forced the very judge presiding over the resentencing hearing to testify at the hearing. Steven T. Corbin is a former DOJ employee retaliated against by Lee Lofthus. Jeffri Davila- Reyes is an incarcerated individual ordered released as his conviction was vacated, but has not been released from the Federal Bureau of Prisons.

**Defendants**

88. Defendant The Office of the Pardon Attorney is where Plaintiff was first employed and initiated protective activities.

89. Defendant The Office of Juvenile Justice and Delinquency Prevention works with Homeland Security and the National Center for Missing and Exploited Children.

90. Defendant National Center for Missing & Exploited Children ("NCMEC") have Ms. Allison's son's case but have not been in contact since June 2023.

91.  Defendant Criminal Justice Information Services (CJIS) placed Ms. Allison's status as armed and dangerous without properly verifying the information defaming her character, preventing her from access to her minor child, adversely impacting her health, and putting her life at risk.

92.  Defendant Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) worked with Ms. Allison to successfully forfeit Plaintiff Jamone Banks' firearms; however, her still has a

conviction and it appears mocked Ms. Allison's work by declaring her armed and dangerous despite never owning or possessing a firearm.

93. Defendant Merrick Garland has intentionally abused his power by harassing Ms. Allison and her clients throughout the duration of her pending employment law matter against him.

94. Defendant Lisa Monaco has knowingly emailed false information to federal courts and U.S. Attorney's offices as commonly done with her office available on public records.

95.  Defendant Beryl Howell has worked with Ms. Monaco to harass and intimidate Ms. Allison throughout the pending matter. On September 10, 2024, she ordered Ms. Allison be arrested for being in her courtroom observing a trial.

96. Defendant Mark Coates has prevented Ms. Allison from accessing the courts and intentionally provided false information to court security on September 10, 2024, resulting in her needing an ambulance and suffering an anxiety attack where numerous concerning blood work was revealed, including blood in her urine and an abnormal EKG.

97. Defendants JMD and EOUSA were responsible for the ratings and maintaining Ms. Allison's personnel file while she was detailed to the U.S. Attorney's Office for DC while employed at OPA.  Upon information and belief, intentionally false information was placed in Ms. Allison's record resulting in retaliation against her and each Plaintiff.

98. Defendants Administrative Office of the Courts, Office of Military Commissions, and the United Nations have each denied jurisdiction while not informing Ms. Allison and Plaintiffs where jurisdiction lies for relief. The Administrative Office of the Courts where Ms. Allison was an applicant has its staff misdocketing PACER filings, refiling without her permission, and

entering orders inconsistent with any rules of civil or criminal procedure.

99. Defendant, Joseph Biden is the commander in chief, chair of the national security council, and the homeland security council responsible for declaring war.

100.  Defendant OPM is where the official records of Ms. Allison are maintained and assists with insider threats.

101. Defendant U.S. Health and Human Services assists with conducting integrity tests of individuals employed with the federal government declared to be an insider threat.

102.  Defendant U.S. Marshals Service is responsible for effectuating process of service to government Defendants but have refused to do so fr Plaintiff.  In addition, U.S. Marshals have instructed local police not to arrest Ms. Allison's abuser as reflected in the police reports during her employment lawsuit against the Office of the Pardon Attorney.

103.    Defendants Federal Bureau of Investigations, Central Intelligence Agency, Office of the Director for National Intelligence, National Counterterrorism Center, Secretary of Defense, and National Security Agency       are each members of the intelligence community knowingly relying of false information regarding Ms. Allison while simultaneously violating the minimization requirements of any investigation or intelligence gathering.  Specifically, the querying procedures of FISA dictate that queries may be conducted only by trained personnel at the NSA, CIA, FBI, or NCTC[28].

104. Defendants Homeland Security and respective agencies Intelligence and Analysis, Federal Protective Service, and Homeland Security Investigations have each violated the rights of each client, including death threats, witness intimidation, obstruction of justice, and interfering

---

[28] *See*: https://www.dni.gov/index.php/nctc-home and https://www.dni.gov/index.php/nctc-who-we-are/history

in Ms. Allison's representation of each client. They have also violated Plaintiffs' privacy rights and took property of Plaintiffs.

105. Defendants 6009 Oxon Hill Road, LLC and U-Haul took, destroyed, and disposed of Plaintiffs' property without any notice or requisite due process.

106. Defendants the Texas Judicial Branch, the Administrative Office of the Courts for Maryland, the District Court for Prince George's County, Maryland, the District and Circuit Court for Montgomery County, Maryland,  Robert Prender and Shulman Rogers, each falsified records and engaged in witness intimidation, falsification of government documents, and obstruction of justice as it relates to Ms. Allison's complaints against 6009 Oxon Hill Road, LLC and the lack of any notice before and after seizing the property of Planintiffs.

107. Defendants Maryland State Bar, Texas State Bar, and Florida State Bar failed to adhere to their mandatory ethical obligations to report and assist in resolving attorney misconduct as inflicted against The Pardon Attorney law firm and its of-counsel law Firm based in Florida.

108. Defendant Maryland Elections failed to properly protect Ms. Allison as a candidate for U.S. Congress on the ballot against Glenn Ivey.

109. Defendant FEC failed to properly protect Ms. Allison as a candidate for U.S. Congress on the ballot against Glenn Ivey.

110. Defendant EEOC failed to properly protect Ms. Allison when they discovered the conspiring against her in 1997.

111. Defendant, Health and Human Services have allowed Plaintiffs to have inhumane loyalty tests on unsuspecting Plaintiffs without their informed consent while refusing to provide them with their medical records.

112.  Defendant Hope Goins failed to follow proper protocol when Ms. Allison made protected disclosures.

113. Defendant Bennie Thompson is the chair of the Homeland Security Council for the U.S. House of Representatives where Mr. Macias-Munoz is showing prevalent signs of torture at the United States Penitentiary in Yazoo City, Mississippi.

114. Defendant Jim Jordan is the chair of the House Judiciary committee.

115. Defendant Stacey Plaskett is the delegate to Congress for the U.S. Virgin Islands who targeted Ms. Allison and her son in what appears to be sex and human trafficking.  Receives a report from Mr. Garland with respect to all physical searches as a member of the Permanent Select Committee on Intelligence of the House of Representatives. Ms. Plaskett has sent numerous death threats to Ms. Allison and engaged in improper disclosures after having her husband seek her out to be her political consultant.

116. Defendant Glenn Ivey is the freshman Congressman to Marylands Fourth Congressional District who appeared on the ballot against Ms. Allison in 2022 when she was unable to communicate with her minor child or husband.  He also receives a report from Mr. Garland on a semiannual basis, as a member of the **House Judiciary Committee** *See*:

https://www.everycrsreport.com/reports/RL30465.html#fn109

117. Defendant John Maloney routinely works with Mr. Ivey to abuse his judicial authority and knowing he signed a false protective order against Ms. Allison to keep her from campaigning against Glenn Ivey.

118. Defendant McCoullough knowing signed a fictitious arrest warrant against Ms., Allison to silence her from speaking out against she and her client's cruel treatment.

119. Defendants the J. Franklin Bourne Bar Association, he Bar Association for

Montgomery County, and the Dallas Bar Association each have had their members defame the chatracter and reputation of Plaintiffs while engaging in the falsification of records to assist in the parental alienation and kidnapping of Ms. Allison's minor child, forced separation of Mr. Young and Ms. Allison while impersonating each spouse to the other.

120. Defendant Jasmine Crockett is Ms. Allison and Mr. Young's Congresswoman who has failed to follow up after Ms. Allison made proper disclosures to her as a member of the House Oversight Committee. Ms. Crockett informed Ms. Allison that she is extremely close with Ms. Plaskett, despite Ms. Allison and Mr. Young endorsing Ms. Crockett for Texas District 30 after her Texas District 6 2021, special election.  Mr. Young and Ms. Allison advocated for and recommended Ms. Crockett for various roles.  On December 4, 2023, Ms. Crockett was already aware of Ms. Allison's penthouse being destroyed as she simply responded asking the size of clothing Ms. Allison wears.  It is clear that she has engaged in improper disclosures with Ms. Plaskett.  Her relationship with Ms. Plaskett as well as Benjamin Crump who along with unknown others raped Ms. Allison is particularly concerning as she appears in pictures with Ms. Allison's client Brianna Baucum whose minor child, Journi Baucum was taken from her and then sexually abused.  Ms. Allison's minor son was showing signs of abuse as verified by Maryland Child protective services.

130. Defendant Texas Attorney General knowingly violated the UCCJEA to circumvent Texas jurisdiction, allowing Maryland to unconstitutionally issue unenforceable orders pertaining to Ms. Allisons minor son.

131. Defendant Angela Alsobrooks is the county executive where Plaintiffs' property was located. Despite repeatedly being informed that The Oxford did not have proper documentation,

she turned a blind eye allowing Ms. Allison to be sexually harassed, assaulted, and raped.

132. Defendant the United States Department of Housing and Urban Development failed tp protect Ms. Allison and Mr. Young despite their repeated complaints and video footage of discrimination.

133. Defendant Internal Revenue Service intentionally allowed for the falsification of Ms. Allison and Mr. Young's taxes.

134. Defendant U.S. Postal Service intentionally allowed for the interference of mail of Plaintiffs.

135. Defendant Kristen Clarke refused to provide protection to ensure that Ms. Allison's claims for a lack of a reasonable accommodation were investigated against the various public and private entities she made disclosures about, including on behalf of her incarcerated clients.

136. Defendant, the Department of Treasury failed to adequately protect the client trust fund of the Pardon Attorney despite Ms. Allison repeatedly informing the State Bar of Texas and banking institutions of intentional interference.

137. Defendant The National Credit Union Administration failed to protect Ms. Allison, a former applicant, and her husband Mr. Young's personal finances and access to credit despite their complaints of fraudulent activity.

138. Defendant, the Department of Labor refused to pay Ms. Allison's approved worker's compensation or begin processing her reoccurence of injury claims. DOL also refused to inform its current and formerly incarcerated individuals about their rights to worker's compensation as well.

139. Defendants X, Google, Meta, Tik Tok, LinkedIn, Dropbox, Cloudfare, and Word each allowed members of the intelligence community to not only provide information, but to interfere

53

with creating and deleting Plaintiffs' information in each platform, suppressing engagement and reach in violation of the first amendment, minimize the ability to scale the businesses, and stopped the monetization capabilities of the businesses and Ms. Allison of each respective platform.

140. Lee Lofthus personally has interfered with Ms. Allison's minor son for years while meeting with her in person, assuring her she would not be retaliated against, and hiding the fact that he was part of the board of director for the private company Federal Prison Industries that utilizes all of the staff for BOP to employ the private company in violation of the appropriations clause. He also has engaged in what appears to be civil and criminal conflicts of interest by controlling the finances of DOJ, including BOP, but pretending not to know where the money has gone during congressional hearings. He has been fully aware of the harassment, assaults, and rapes Ms. Allison has endured for many years.

141. Defendant Prison Industry Enhancement Certification Program works with FPI aka Unicor to circumvent the U.S. Constitution's 13th amendment ban on slavery by falsely stating that their goal is rehabilitation and the proceeds the incarcerated individuals make goes towards their fines and or restitution when in reality, the individuals receive pennies for every dollar and the profits are kept by the institution who sells the majority of the products to members of the intelligence community.

142. Montgomery County Police Department, Montgomery County Sheriff Department, Sharon Burrell, Leo Wise, Lydia Lawless, Erek Barron, Sherilyn Moses, Chaundra Holloway, Lasheena Williams, Montgomery County Public Schools, Maryland Department of Health and Human Services each failed to protect the safety and well-being of Ms. Allison's minor child, intentionally falsified documents, and assisted in the parental alienation and kidnapping of Ms. Allison's minor child. They each have intentionally assisted in falsifying Ms. Allison's record,

statements, and activities while using her social media postings as a frame of reference and source when Ms. Allison has never posted what she is doing, when, where she is, who she is with, or why. Each Defendant has blatantly displayed their impersonation of Ms. Allison while she was still employed by DOJ up until present time.

143. The Maryland Attorney Grievance Commission and Texas Disciplinary Counsel have been informed of the fraudulent activities taking place. However, they have failed to act. Instead, for the first time in 16 years, Ms. Allison began receiving bar grievances against her Maryland law

license that she had already voluntarily resigned from.

## XII.  IMMUNITIES
### THE GOVERNMENT IS IMMUNE FROM LAWSUITS

#### i. No Immunity Under Employment Law

144. ***Employment law immunity***: Claims that arise from Title II where "[t]here [is] a valid waiver of the United States' sovereign immunity."  *Gill v. Department of Justice*, No. 15-824, 2016 WL 3982450, at *7–8 (D.D.C. July 22, 2016). Workers' compensation laws generally require employers to compensate employees who are injured or become ill in the course of employment for the resulting loss of earning capacity and for medical care. *See* 1 Arthur Larson, The Law of Workmen's Compensation, § 1-1.10 (1994).

#### i. No Immunity Under ADA

145. ***Disability immunity*** pursuant to the Americans with Disabilities Act.  The following must be proven:

    (1)      Plaintiff has pleaded a *prima facie* case under title II of the ADA.
    (2)      Congress has specifically abrogated the States' eleventh amendment immunity for suits brought pursuant to the ADA;
    (3)      Under title II of the ADA the defendants can be sued in their official capacities**;** and
    (4)      Judges do not enjoy absolute immunity for acts that are administrative rather than judicial in nature

#### iv. No Immunity Under the Administrative Proceedings Act

146. ***Administrative Procedures*** is when Plaintiffs seek actions requesting specific relief other than money damages, such as an injunction, a declaratory judgment, or a writ of mandamus. *Bowen v. Massachusett*s, 487 U.S. 879 (1988).

147. Plaintiffs are suing Executive Branch Defendants in their official capacity for any injunctive relief Plaintiffs are requesting and are suing Executive Branch Defendants in their individual capacity to the extent the acts in controversy are administrative in nature and not protected by the absolute immunity doctrine.

148. Under the Administrative Procedure Act, "agency" means each authority of the government of the United States, whether or not it is within or subject to review by another agency, but **does not include Congress, U.S. courts**, governments of the territories or possessions of the United States, or the District of Columbia, among other things. *Id*. **As a result, Plaintiffs are requesting affirmative relief as it pertains to ATF, DOT, SEC, EOUSA, DHS, and EOIR** for failing to prosecute, prosecuting without proper disclosures, and interfering with TPA's client matters**; OCR** for failing to intervene with Ms. Allison's disability rights violations**; HUD** for failing to intervene with Ms. Allison's complaints regarding The Oxford Apartments and Skyline Trinity Apartments; **OJP, NCMEC, TAG**, for failing to follow polies and procedures regarding missing and exploited minor children; **NSC, HSC, NSD, NSA, FBI, NCTC, CIA, ODNI, and DAG** for failing to adhere to strict FISA policies and procedures.

SEC, DOL, DEA, MPIA, NSA, FBI, and ODNI.

### vi. No Immunity for Judges

149. ***Judicial immunity*** is not a bar to prospective injunctive relief against a judicial officer acting in a judicial capacity or to attorney's fees for obtaining such relief. *Twilligear v. Carrell*, 148 S.W.3d 502, 505 (Tex. App. Houston 14th Dist. 2004) (citing *Pulliam v. Allen*, 466 U.S. 522, 542-44, 80. L. Ed. 2d 565, 104 S. Ct. 1970 (1984). As a result, a judge can be sued via injunction to correct an error of law of judicial character or administrative character and can be liable for attorney's fees.

150. Plaintiffs are suing Judicial Defendants in their official capacity for any injunctive relief Plaintiffs are requesting and are suing Judicial Defendants in their individual capacity to the extent the acts in controversy are administrative in nature and not protected by the absolute immunity doctrine.

### vii. No Immunity for Congress Members

151. ***Congressional immunity*** does not apply to "acts that are unrelated to a legislator's duties (*e.g.* defamatory statements made during a press conference) and acts that occur <u>without lawful authority</u> (*e.g.* unconstitutional procedures for enacting legislation or a subcommittee investigator illegally seizing documents without a subpoena)." As a result, reliance on the speech and debate clause does not apply to the acts committed by the Congressional members identified as Defendants.

Plaintiffs are suing Congressional Defendants in their official capacity for any injunctive relief Plaintiffs are requesting and are suing Congressional Defendants in their individual capacity to the extent the acts in controversy are administrative in nature and not protected by the absolute immunity doctrine.

### v. No Immunity for Agents with Directives[73]

152. "[FBI a]gents cannot promise any immunity or any reduction in sentence to a criminal who furnishes information, and they must not put themselves in a position where they might subsequently be accused of having done so." MOI, § 108(D)(4).

153. The harassment, threats, and falsification of various records by Agents of the Government with Directives are not protected by FISA directives because employment retaliation is not a covered civil action. *See*: https://www.law.cornell.edu/uscode/text/50/1885a

### XIII.  BACKGROUND

**A. Mr. Margolis worked on Whitewater with Baltimore, Maryland, Resident, Roger Adams, Former Pardon Attorney who believes that "Nigerians are not honest."**

154. Unbeknownst to her, Ms. Allison was hired as an intern at the Office of the Pardon Attorney in 2008, months after Roger Adams was removed from the serving as the Pardon Attorney for his racist remarks towards Nigerians.



*See*: https://www.foxnews.com/story/justice-departments-pardon-attorney-accused-of-racism-retaliation-and-

mismanagement (last accessed August 28, 2024).

> According to an investigation of the case by the department's Office of the
> Inspector General, Adams told a colleague that Okorie was "about as
> honest as you could expect for a Nigerian. Unfortunately, that's not very
> honest." When asked about the remark, Adams told investigators that he
> believes Nigerian immigrants "commit more crimes than other people,"
> and that an applicant's ethnic background is "an important consideration"
> in the pardon's process. "It's one the White House wants to know about,"
> Adams said.

> *See*: https://www.propublica.org/article/brooklyn-minister-target-of-racist-comments-by-former-pardon-attorney-waits#:~:text=Unfortunately%2C%20that's%20not%20very%20honest,consideration%22%20in%20the%20pardon's%20process.(last accessed August 28, 2024).

## B.  **Nigerian Ms. Allison Denied a Performance Review for Using FMLA**

155. OPA refused to provide the undersigned counsel with a performance evaluation and

constantly referenced the birth of her child.  As of today, Ms. Allison still has never received her

performance appraisal for the 2013 through 2014 calendar year.  *See*:

https://storage.googleapis.com/msgsndr/7SMarDC7BRap5Jllw3d7/media/6675d04c19bb7a4b15
48f693.pdf

**From:** Schmidt, Eric
**Sent:** Monday, December 29, 2014 2:12 PM
**To:** 'Tammy.Holloway@usdoj.gov'
**Cc:** Collins, William C
**Subject:** RE: Skipping the 2013-2014 rating period

Ms. Holloway,

As a follow-up to our conversation today, I am including the regulatory citations we discussed and
the Q&A from OPM's website.

- 5 CFR 430.206(a)(1) *Appraisal Period.* An appraisal program shall designate an official
  appraisal period for which a performance plan shall be prepared, during which performance
  shall be monitored, and for which a rating of record shall be prepared.

· 5 CFR 430.206(b)(2) Performance plans shall be provided to employees at the beginning of each appraisal period (normally within 30 days).

· 5 CFR 430.206(b)(3) An appraisal program shall require that each employee be covered by an appropriate written, or otherwise recorded, performance plan based on work assignments and responsibilities.

· 5 CFR 430.207(a) *minimum period.* An appraisal program shall establish a minimum period of performance that must be completed before a performance rating may be prepared.

Can employees on approved annual or sick leave be held to a work performance standard in their performance appraisal?
An agency may not hold an employee accountable for work that does not get done because of an absence for which the employee is on any type of approved leave.  If there is a specific performance standard for the appraisal year, it may be prorated for the amount of time the employee was at work. I will discuss your issue with my colleague Bill Collins when he returns, and get back with you (sometime after January 5th).

Regards,


**Eric Schmidt**
Human Resources Specialist
U.S. Office of Personnel Management


## C. Ms. Allison Reported the Office of the Pardon Attorney Refusing to Process *ANY*

# Pardon Cases and Commutation Cases of Non-U.S. Citizens

**IG COMPLAINT**
December 23, 2014

Tammy Allison Holloway
Attorney-Advisor
Office of the Pardon Attorney
8342 Broderick Circle
Gaithersburg, Maryland 20877
Tammallison@gmail.com
301-379-3658 cell

U.S. Department of Justice
Office of the Inspector General
Investigations Division
950 Pennsylvania Avenue, N.W.
Room 4706
Washington, DC 20530

This is my second complaint. I initially submitted my complaint on November 21, 2014, but when I followed up on December 22, 2014, I was informed that the complaint could not be located and to resubmit it. My complaint is as follows:

The Pardon Attorney, Deborah Leff has discriminated against me and disrespected me on numerous occasions while also managing the Office of the Pardon Attorney in an improper manner.

She refuses to provide me with a performance work plan, mid-year review, or annual review for the 2013-2014 rating period. Besides the 10 weeks of approved FMLA leave that I took between June 24, 2014 and August 29, 2014, in order to have a c-section, care for my newborn son, and recover I have remained an attorney-advisor at the Office of the Pardon Attorney during the entire rating period. I have never missed a rating since I have been employed at this same office as an attorney-advisor since 2010. Newly hired attorney-advisors in my office even received annual reviews for the 2013-2014 rating period, but I was refused. She also refuses to provide me with Department's policy regarding performance work plans, mid-year reviews, and annual reviews and how the use of FMLA impacts an employee's right to receive them.

On 9/9/14 and again on 11/25/14 a colleague referred to me as hormonal and followed me down a hallway and barged into a closed office where I was located. I brought it to Deborah's attention and she refused to acknowledge my complaint or do anything about it.

On Monday, 11/10/14 at 2:45pm, Deborah Leff, the Pardon Attorney, informed the office via email that Will Taylor, a temporary non-attorney GS-14 detailee from ENRD, had been

selected (despite not qualifying for the one-year minimum at OPA as the announcement called for, not going through a proper interview process since Deborah created the position for him and made remarks for months about him becoming permanent OPA employee, Deborah did not announce the position to office as she had done with every other position that becomes available at OPA, and Deborah even allowed him to switch offices to an attorney's office on before his selection on 9/8/14 while explaining that he is in that office for the position he will receive, and for himself worked on changing the GS-12 to a GS-15 ) for the GS-15 Supervisory Management & Program Analyst position in OPA and as of Sunday, 11/16, will be serving on a permanent, rather than an acting, basis as OPA's Executive Officer.

On 11/14 I submitted my application materials to the Deputy Pardon Attorney position that was announced to the office. On 11/19 I received an email from Will (who is extremely close to Deborah and I am sure that he shared with her the fact that I applied) informing me that he would not refer my application for the Deputy Pardon Attorney position to the hiring official because he decided that I did not meet the minimum qualifications. I assume he is referring to the 10 years of post-JD experience when I have 5 years; however, the hiring official (Deborah) hired him on 11/16 to the Supervisory Management & Program Analyst which required a minimum qualification of one year experience at the Office of the Pardon Attorney when he only had 6 months experience at OPA as a detailee from ENRD. If the hiring official made the decision to hire him when he only met the minimum qualifications by half of the time necessary to qualify for one year, my application should at least be referred to the hiring official to make a decision since, I too, have half of the time necessary to qualify for 10 years.

I also have noticed unfair treatment of the petitioners who apply to our office for executive clemency. The most troubling is the fact that Deborah has instructed the attorneys to work solely on applications for commutation under the DAG initiative and not to work on any traditional commutation cases or pardon cases, unless we feel that the pardon cases deserve favorable action. However, for new cases, it is impossible to decide that without conducting the proper research necessary which unfairly leaves numerous petitioners out of consideration for favorable action. She also advised us to respond to every request for the status of the pardon application from the petitioner by falsely informing them that their case remains under consideration despite the fact that we are not working on their cases at all.

Thank you,

Tammy Allison Holloway, Esq.

---



**M Gmail**                                                    Tammy Allison <tammallison@gmail.com>

## Re: OSC Disclosure (DI-15-1696)

**Gmail1 <tammallison@gmail.com>**                              Wed, Feb 25, 2015 at 10:11 AM
To: "Mason-Gale, Treyer" <tMason-gale@osc.gov>
Cc: "Scott, Jeffrey" <jscott@osc.gov>

Thank you, Mr. Mason-Gale. I would like to add that on February 24, 2015, another prohibited practice was revealed during a meeting. The Office of the Pardon Attorney under the direction of the Pardon Attorney, Deborah Leff, has not been processing the petitions for executive clemency if the applicant is a non-U.S. Citizen. Instead, they have been placed in a non-citizen queue where they have not been given an opportunity to be evaluated for recommendation to the President. That goes against the office's and Department's policy.

Thank you,

Tammy

---

**Gmail**      Open with ▾      Tammy Allison <tammallison@gmail.com>

## Re: Disclosure
4 messages

**Tammy Allison <tammallison@gmail.com>**                       Wed, Jan 14, 2015 at 9:37 AM
To: "Scott, Jeffrey" <jscott@osc.gov>

Thank you, Jeffrey:

To clarify executive clemency involves pardons and commutation of sentence. Clemency references both of them. Our office currently at the direction of the Pardon Attorney is prioritizing the processing commutations under the April 2014 Deputy Attorney General (DAG) initiative on clemency which focuses on identifying candidates that meet six factors for commutation. Due to this initiative we have been instructed to focus on commutation applications that could be considered for this DAG initiative. This means traditional commutation applicants and pardon applicants, including those petitions that were already pending at our office prior to the DAG initiative announcement are not being processed. Our office holds clemency staff meetings and attorney case round meeting where we only discuss the clemency initiative and it is reiterated not to work on anything other that the DAG initiative cases. Everything regarding this is told to us verbally. There are no agendas, notes, or any other written instruction from meetings. It is very rare that these instructions are communicated to us in writing. I attached the instances in which management has communicated this request via email, and an email that I sent to a support staff member with management copied on it instructing her not to perform any pardon work. The support staff has also been instructed not to provide us attorneys with support as they are only processing DAG initiative cases. Again, priority is being given to DAG initiative cases, pardon and traditional clemency petitions are not being processed fairly, and we have been verbally instructed repeatedly to provide every petitioner who asks for a status update to respond that we are processing their application and it remains pending despite the fact that the majority of them are not.

Please let me know if you need any additional information. Thank you.

Tammy Holloway, Esq.
301-379-3658

156. It is noteworthy that many of those protected disclosures appear in a 2018 Office of Inspector General Report.  Ms. Allison never received credit for nor the requisite protection. *See* https://oig.justice.gov/reports/2018/e1804.pdf

### C. David "Waterboarding/Torture Memo[29]" Margolis was Ms. Allison's Responsible Management Official at FBI Headquarter Mediation

157. Ms. Allison was scheduled to attend mediation on December 9, 20214.  On December 8, 2014, she received an email indicating a last-minute change of locations and she would need to meet the late David Margolis at the Federal Bureau of Investigations Headquarters.  During what was supposed to be mediation to address the informal complaint of discrimination, the most powerful man in recent DOJ history, and the longest serving attorney in DOJ history, David Margolis, changed the meeting location one day before it was supposed to take place. Due to the abrupt change, Ms. Allison secured counsel to accompany her to the Federal Bureau of Investigations headquarters.  Given the silent treatment of Defendants, adding to her harassment and retaliation claims, a recent review of the 2014, emails have shockingly revealed that the email address of the "mediator" and "coordinators" belonged to members of the

---

[29]Types of torture: https://www.freedomfromtorture.org/news/what-is-torture

intelligence community.

**From:** Burnett, Sybil L. [mailto:Sybil.Burnett@ic.fbi.gov]
**Sent:** Monday, December 08, 2014 11:03 AM
**To:** Holloway, Tammy (OPATTY)
**Subject:** FW: Mediation - LOCATION CHANGE
**Importance:** High

Greetings,

Thank you for your patience as a new meeting location was found.  Below is the logistical information for the mediation.  Please feel free to contact me with any questions:

- Date:              Tuesday, December 9, 2014

- Start Time:     11:00 am

- **Location:        FBI Headquarters**

          **935 Pennsylvania Avenue, NW, Washington, DC, 20535-0001**
          **(Between 9th and 10th Streets)**

          **Visitors' Entrance is on Pennsylvania Avenue**

- Directions:       FBI Headquarters is easily accessible by public transportation: BLUE/ORANGE Lines to Federal Triangle; RED/BLUE/ORANGE Lines to Metro Center; and the YELLOW/GREEN Lines to Navy/Archives Memorial.  Please access Metro Trip Planner for more detailed information

- Escorts:           Please bring a picture ID with you.  Upon arrival at the visitors' center you may ask for the Office of Equal Employment Opportunity Affairs (OEEOA) - telephone number 202-324-4128.  Someone will come to the visitors' center to escort you to the mediation.

- Contact:           Geraldine Chacon is the point of contact at FBI Headquarters.  Should you need to speak with her, she can be reached at 202-324-3825.

Thank you for your patience, and I look forward to working with you tomorrow.

Sybil

Sybil L. Burnett

DOJ Mediator

(202) 323-1272 desk

(202) 324- 3895 fax

sybil.burnett@ic.fbi.gov

From: "Burnett, Sybil L." <Sybil.Burnett@ic.fbi.gov<mailto:Sybil.Burnett@ic.fbi.gov>>
Date: December 8, 2014 at 2:32:50 PM EST
To: "Chacon, Geraldine" <Geraldine.Chacon@ic.fbi.gov<mailto:Geraldine.Chacon@ic.fbi.gov>>
Cc: "Holloway, Tammy (OPATTY) (JMD)" <Tammy.Holloway@usdoj.gov<mailto:Tammy.Holloway@usdoj.gov>>
Subject: Mediation tomorrow

Geraldine,

Ms. Holloway has decided to retain counsel.  Besides bringing a picture ID, what other steps are necessary for Ms. Holloway's Counsel to attend the mediation tomorrow at FBI Headquarters.

Sybil
Sybil L. Burnett
DOJ Mediator
(202) 323-1272 desk
(202) 324- 3895 fax
sybil.burnett@ic.fbi.gov<mailto:sybil.burnett@ic.fbi.gov>

CONFIDENTIALITY STATEMENT:
The message, along with any attachments, may be confidential and legally privileged.  If you are not the intended recipient of this message, please destroy it promptly without further retention or dissemination (unless otherwise required by law).  Please notify the sender of the error by a separate e-mail or by calling (202) 323-1272.

On Dec 8, 2014, at 4:15 PM, "Chacon, Geraldine" <Geraldine.Chacon@ic.fbi.gov<mailto:Geraldine.Chacon@ic.fbi.gov>> wrote:

Hi –

I just need the name of the attorney.  Thanks.

Geraldine
[Quoted text hidden]

158. While she recalls a veiled threat by Mr. Margolis in response to her requesting a transfer to a different senior management office, he responded with a demand for why she believed she even deserved to be at a senior management office.  When Ms. Allison explained because she had always worked at a senior management office, Mr. Margolis stated that she needed to earn it on her own merit. The black attorney that accompanied him, Barbara Bush, stated "in life you do not always get what you want" in response to Ms. Allison requesting a performance appraisal. When Ms. Allison's then-attorney asked Ms. Bush if she was going to be the agency's attorney, she responded to Ms. Cheri Cannon with "we'll see if that will even be necessary."

**Holloway, Tammy (OPATTY)**

| | |
|---|---|
| From: | Holloway, Tammy (OPATTY) |
| Sent: | Monday, December 01, 2014 2:38 PM |
| To: | Margolis, David (ODAG) |
| Cc: | Leff, Deborah (OPATTY) |
| Subject: | RE: Hostile work enviorment |

Yes, sir.  Thank you for your response.  Have a nice day.

Tammy Allison Holloway
Attorney-Advisor
Office of the Pardon Attorney
U.S. Department of Justice
1425 New York Ave. Rm. 11000
Washington, D.C. 20530
(202)616-1695 Office
(202) 598-0519 Cell
(202) 616-6069 Fax
Tammy.Holloway@usdoj.gov

From: Margolis, David (ODAG)
Sent: Monday, December 01, 2014 2:37 PM
To: Holloway, Tammy (OPATTY)
Cc: Leff, Deborah (OPATTY)
Subject: RE: Hostile work enviorment

Tammy: you have asked for my advice and here it is. I recommend that we address these issues in the context of the mediation which I understand is scheduled for next Tuesday ( the 9th). In the meantime, my observations re the requirement of civility in the Department's workplace still stand.

Holloway, Tammy (OPATTY)

| | |
|---|---|
| **From:** | Margolis, David (ODAG) |
| **Sent:** | Monday, February 16, 2015 1:45 PM |
| **To:** | Holloway, Tammy (OPATTY) |
| **Subject:** | OIG Referral |

Tammy: By memorandum dated 2-4-15, the OIG referred your complaint of 11-21-14 ( resubmitted on 12-23-14) to me for whatever action I deem appropriate. Upon review of this referral, I determined that the matters complained of duplicate allegations you have already raised and are pending resolution in the EEO and the DOJ Grievance processes. Because these issues and your requests for personal relief are under consideration in other fora that are better suited to their adjudication, I will not take action on them at this time.

Sincerely,
David

159. On December 9, 2014, Ms. Allison attended mediation with her attorney, but the location was changed at the last minute to FBI headquarters. A recent review of the emails shows that the last-minute change of location, by Mr. Margolis, for mediation to the Federal Bureau of Investigations Headquarters, was with Sybil L. Burnette, a member of the national intelligence community. It appears as though the mediation was actually a retaliatory referral to national intelligence at the FBI Headquarters.

160. The most senior attorney in DOJ history was the senior management official, Mr. Margolis, who asked Ms. Allison me why she believes that she deserved to be in a senior management office. When she replied because that is where she has been since 2008, and she simply deserved to be treated fairly even with a newborn baby, he laughed. Barbara Bush then stated, "in life you do not always get what you want." The "mediation was memorialized in emails to her then-attorneys.

## XIIII.  AGENCY SANCTIONED TWICE

161. On June 9, 2016, the EEOC judge sanctioned agency counsel for being untimely with their report of investigation.

162. On December 2016, Complainant received an offer of employment with BOP.

163. On March 30, 2017, the EEOC judge sanctioned the agency counsels again by

ordering them off Complainant's case after they were caught conspiring via email

communications in a coordinated plan to retaliate, harass, and lodge misconduct against

Complainant.



*See*: Full privilege log:

https://storage.googleapis.com/msgsndr/7SMarDC7BRap5Jllw3d7/media/664b738d25659bd011
c517df.pdf

164. The Agency sought reconsideration of the sanction on April 7, 2017. See:

https://storage.googleapis.com/msgsndr/7SMarDC7BRap5Jllw3d7/media/6684034587704fe21b6
f1960.pdf

165. Complainant responded via her attorney on April 10, 2017. See:

https://storage.googleapis.com/msgsndr/7SMarDC7BRap5Jllw3d7/media/66840343007b03c985
e66e15.pdf On April 11, 2017, the Agency rescinded Complainant's job offer with BOP, citing

the hiring freeze, even though the hiring freeze was over.

166. On May 2, 2017, the EEOC judge issued a clarification order confirming agency

counsel's sanctions of recusal the EEOC judge sanctioned agency counsel for conspiring with

Complainant's supervisors and the EEOC investigator in an oral order recusing them from

participating in the matter.  *See*:

https://storage.googleapis.com/msgsndr/7SMarDC7BRap5Jllw3d7/media/66840345765bd7cfbbb

b9fde.pdf Ms. Allison was immediately taken off of her detail that same day.

## XIII. MARYLAND CONGRESSIONAL RUN AGAINST GLEN IVEY

### A. Discovery of "Armed and Dangerous" Status

167. Five days after appearing on the ballot against Mr. Ivey, on March 22, 2022, Ms.

Allison's ex-husband, Stephen William Holloway, made false allegations that Ms. Allison, who

is a resident of Texas along with her husband, Mr. Young, threatened him and her minor son

with a gun days after her March 11, 2022, second wedding.  *See* Exhibit E.  Defendants through

Federal Bureau of Prisons ("BOP") counselor Roy Drummond, was told I that there was a "HIT"

on Ms. Allison's name that that she was "armed and dangerous" when she attempted to visit her

law firm's client, Jesus Gregorio Macias-Munoz, Register Number 62259-080, incarcerated at

BOP's United States Penitentiary in Yazoo City, Mississippi on April 11, 2023.  On April 24,

2023, Ms. Allison conducted her own FBI background check and spoke to CJIS officials who

reassured Ms. Allison that Mr. Drummond misspoke as nothing was revealed in the results.

168. Federal Bureau of Prisons ("BOP") counselor informed her that she had been

declared to be "armed and dangeros." Alarmed, Ms. Allison reached out to agent Bernard

Mensah with the Federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") who

she has successfully surrendered firearms to on behalf of Plaintiff, Jamone Banks, who suggested

she immediately verify and remove the description of "armed and dangerous" as she has a high

probability of being shot and killed by law enforcement if she were to get pulled over or have an

encounter involving police.

**B. FBI and BOP Intentionally Misled Ms. Allison Informing her that "Armed and Dangerous" was Never in Her Records**

169. On April 26, 2023, Ms. Allison submitted a request for her Federal Bureau of Investigation ("FBI"), Criminal Justice Information Center ("CJIS") records which came back clear as she has never been arrested or had any negative encounters with law enforcement.  By May 2023, Assistant United States Attorney, John Johnston, with the U.S. Attorney's Office for the Western District of Texas in El Paso, where Mr. Macias-Munoz was sentenced, stopped speaking to Ms. Allison without explanation.

170. On June 2023, Ms. Allison was invited to speak at BOP's Federal Detention Center in Miami, Florida.  Her National Criminal Information Center ("NCIC") background check was returned as clear as well.  That same month, still needing to be sure, she attempted to obtain her records from the Administrative Office of the Maryland Courts to see what Mr. Holloway, Mr. Ivey, and Mr. Maloney may have put in the court records since her attorney, Jessica Charles, refused to provide her with copies.  Ms. Allison was physically restricted, threatened with arrest, and more on June 1, 2023, before all of the power in Annapolis, Maryland, was turned off.

171. Ms. Allison began an email chain with her former colleages from when she was a SAUSA on June 20, 2023, forwarding Mr. Ivey's original email to DOJ's Chief of the Public Integrity Division, Corey Amundson; the Director of the Elections Crime Branch, Robert Heberle; Election Threats Task Force Deputy Director, John Keller; Election Crimes Branch Director of Enforcement and Litigation, Sean F. Mulryne; and each District Election Officer at the U.S. Attorney's Office for Texas, Damien Diggs; for Maryland, Leo Wise; and for D.C. Elizabeth Aoli.  Ms. Allison also forwarded the email chain to her former supervisor, Brian Hudak, Chief of the U.S Attorney's Office for D.C., Civil Division; her mentor, Assistant U.S. Attorney,

Oliver McDaniel; and her mentor, Executive Office of United States Attorney's Deputy Chief, Suzanne Bell.  By October 2023, Mr. McDaniel added Ms. Allison's other mentor, Deputy Chief, Heather Graham-Oliver to the email chain. No one responded.  She also forwarded the email she sent to Ms. Bell to Officer Iliana Rodriguez with the Montgomery County, Police Department. iliana.rodriguez@montgomerycountymd.gov

172. In late June 2023, Ms. Allison was contacted by FBI Agent Rose V. Marketos who instructed Ms. Allison that she was only looking into election fraud, but not her son's parental kidnapping. Ms. Marketos never responded or followed up with the undersigned counsel.

**C. Glenn Ivey Interfered With the 2022 Congressional Election**

173. On August 1, 2023, Mr. Robles provided Ms. Allison with a copy of the NCIC report that FBI was  adamant did not exist which shockingly inaccurately and unlawfully displays Ms. Allison,  someone who has never possessed or owned a firearm, as "armed and dangerous."

174. Ms. Allison immediately forwarded the information to FBI agent Gregg Demore in August 2023, who stated that he would look into it. He did not. In August 2023, Ms. Allison visited DOJ's Public Integrity Office in person to get assistance, Federal Protective Service Inspector Brad Schultz, with DHS, threatened Ms. Allison with Oleoresin capsicum (pepper spray). A formal complaint regarding the incident has remained unanswered.

**D. The Pardon Attorney has FBI Records aka Client Property**

175. On October 1, 2023, Ms. Allison filed her fourth or fifth Freedom of Information Act ("FOIA") request to the Federal Bureau of Investigations ("FBI").

176. On October 5, 2023, Ms. Allison was hospitalized because of her anxiety causing

her uterus to hemorrhage.

177. By October 12, 2023, an Assistant United States Attorney ("AUSA") interfered with Ms. Allison's ability to obtain transcripts from a private company related to the case she shadowed her mentor Oliver McDaniel on based on Mr. Ivey's false allegations against her.



178. On October 14, 2023, the private company gaslit Plaintiff, Ms. Allison stating that she had not spoken with anyone.

179. Later that same day on October 14, 2023, Ms. Allison's mentors Antoinette Barksdale, General Counsel with DOJ's Community Relations Service; Felicia Sadler, Senior

Trial Attorney at DOJ's Civil Rights Division; and Raheemah Abdulaleem, General Counsel and

Special Assistant to the President at the Executive Office of the President, invited her to dinner

to urge her to seek medical care while simultaneously reprimanding her for appearing on the

ballot for U.S. Congress against Glenn Ivey for Maryland's Fourth Congressional District in

2022, without first informing them.



180. Once Ms. Barksdale heard of a portion of the abuse Ms. Allison was enduring, she

called Attorney Benjamin Crump who asked her on speaker phone "has [Ms. Allison] been

charged yet?"

181. On October 20, 2023, Ms. Allison passed out at her Washington, D.C. Watergate

office and was transported by ambulance to the hospital.

182. On October 26, 2023, Plaintiff Ms. Allison timely filed a subsequent worker's

compensation claim based on her recurrence of injury.



183. On October 27, 2023, Ms. Allison had emergency surgery on her uterus to manage the anxiety-caused hemorrhaging of her uterus.

184. On November 16, 2023, after discussing the arrangements for the matter of Mr. Macias-Munoz, proceedings began, without any notice or warning, to suspend the Florida bar license of The Pardon Attorneys of-counsel attorney, apprentice, and firm successor, Wil'lishia Plant, who was covered under the law firm's malpractice insurance, after remaining dormant for many years.

185. On November 19, 2023, Ms. Allison traveled to El Paso, Texas, to file a Motion for Reduction in Sentence for Mr. Macias-Munoz, in person.

186. On November 22, 2023, Ms. Allison filed a Motion for Reduction in Sentence on behalf of her client, Jesus Gregorio Macias-Munoz, in El Paso, Texas, based on compassionate release due to his severe illness and age, including having been struggling with pain and blindness in his eye since his pretrial detainment in 1994, but the U.S. Marshal refused him

medical care.

187. On November 25, 2023, Ms. Allison returned to Maryland where Homeland Security Heinar Capti and his "friends" came to her penthouse to install a ceiling fan captured on Plaintiff Ms. Allison's Ring camera.  They never installed it.

188. On December 4, 2023, the day the government's response to Mr. Macias-Munoz's Reduction in Sentence Motion was due, Ms. Allison's Prince George's County, Maryland penthouse at The Oxford Apartments[53] located at 6009 Oxon Hill Road, Oxon Hill, Maryland, was broken into with all of her, her minor child, husband, and clients of her law firm's property taken, destroyed, and thrown away without any notice or due process. That morning an email was sent to Robert Prender inquiring as to any court dates as he was retaliating against Ms. Allison for preventing the residents from being evicted. The entire three-bedroom penthouse door was busted in, and all belongings were taken, damaged, destroyed, and stolen without a warrant, a note left behind, or a response to the email to Prince George's County government officials from that morning or evening.



74



Videos taken by neighbors do not reflect that this was 1. a lawful eviction; 2. a criminal forfeiture; 3. an administrative forfeiture; or 4. a civil forfeiture.  Even if the responsible Defendants falsified and backdated documents, they would be out of compliance given the fact that Plaintiffs never received any notice, there was no chain of custody, a note left behind, or the requisite 60 or 90-day delayed notice.  Ms. Allison has petitioned the courts numerous times and inquired with Defendants but has only received silent treatment. Given the acknowledgment of records from

189. On December 7, 2023, Judge J. Bradford McCollough issued a warrant for the undersigned counsel's arrest, knowing she was never served, for a purported civil family law court date when the undersigned counsel was having surgery.

190. On December 9, 2023, Ms. Allison travelled to Orlando, Florida, to attend a holiday party for Carrington Jones, the then-boyfriend of her of-counsel attorney, Wil'lishia Brenay Plant; and to review the filings for Mr. Macias-Munoz.

191. December 13, 2023, received a response indicating that FBI had records on her dating back to 2018 when she was still employed by DOJ.  *See* Exhibit A. Ms. Plant and Ms. Allison prepared a motion for default in Mr. Macias-Munoz's pending matter the AUSA's had not responded to.

192. On December 14, 2023, Ms. Plant and Ms. Allison received a response from the government in opposition to their motion requesting the Honorable David Briones to grant Mr.

Macias-Munoz's motion for leave to reinstate his Motion for a Reduction in Sentence in the form of Compassionate Release, a response to their request for the judge to grant the reduction in sentence as conceded, and a response to their motion for default. Ms. Allison and Ms. Plant quickly worked on a reply motion as Ms. Allison had a flight scheduled to leave that night back to the D.C. area.

193. That evening into the early morning hours of December 15, 2023, as Ms. Allison was preparing to travel back to the D.C. area, Mr. Jones began abusing Ms. Plant and her infant daughter ordering Ms. Allison to leave repeatedly while screaming at Ms. Allison and Ms. Plant fearfully cradling their infant daughter. Afraid that Mr. Jones would snap, Ms. Allison remained seated silently as she recorded his abuse given the fact that days earlier, he had entered to living room with an AK47 equipped with a laser beam after Ms. Allison and Ms. Plant informed him that noises were heard inside of the home. Officers arrived when Ms. Allison was already scheduled to leave for her flight. She informed them that they needed to check on Ms. Plant before she left.

194. Later that same day, on December 15, 2023, Ms. Allison received notice that Judge Briones granted the motion for leave to reinstate Mr. Macias-Munoz's Motion for a Reduction in sentence as well as the reduction in sentence based on Compassionate Release after 33 years of incarceration.

195. On December 18, 2023, the U.S Attorney's Office for the Western District of Texas filed a motion for more time to respond to a motion that was already granted. Surprisingly, Judge Briones granted it. In the most nonsensical turn of events, Mr. Macias-Munoz's motion went from being granted to Defendant and the undersigned counsel being houseless and gaslit, without an opportunity to discuss a release plan.

196. On December 19, 2023, Ms. Allison attempted to file an emergency motion before this court, forwarded emails as the clerk requested as time was no way to get them printed, but was told the court was closed at 4:00 p.m., when Ms. Allison attempted to explain that time is an

emergency motion judge for criminal and civil matters beginning at 4:30 p.m., that she was

denied access to the court, questioned by U.S. Marshals employed by Defendants, and unable to

appear before a Title III judge on an emergency basis. The clerk's office also refused ECF filing

Ms. Allison despite her being a member of the court since 2016.

197. The next day, December 20, 2023, Senior Judge Briones, presiding over Mr. Macias

Munoz's matter denied a motion to reconsider dated December 19, 2023, at what appears to be

the same time that Ms. Allison was at the clerk's office in D.C.

198. On December 27, 2023, after Ms. Allison sought clarification from Assistant U.S.

Attorney Adrian Gallegos, with the U.S. Attorney's office in the Western District of Texas, El

Paso Division, regarding his office's involvement with her apartment and access to FBI records

and recordings possibly involving Mr. Macias-Munoz, violating his sixth amendment rights. Ms.

Allison received a response back that the U.S. Attorney's Office for the Western District of

Texas, El Paso, would not be communicating with her despite the fact that she is the attorney of

record for Mr. Macias-Munoz.

199. Confused, on December 29, 2023, Ms. Allison attempted to file a motion with the

Foreign Intelligence Surveillance Court and was denied access.

200. Suspecting retaliation based on employment law matters related to herself, not Mr.

Macias-Munoz, Ms. Allison filed an employment law complaint on January 25, 2024. Ms.

Allison filed a Complaint in the U.S. District Court for D.C. along with a Temporary Protective

Order/Preliminary Injunction. The matter was assigned to Beryl Howell. U.S. Marshals

screamed at Ms. Allison, physically assaulted her, and followed her around the court as the

"open" court's doors were locked. Ms. Allison was not allowed to wait in the court for an *ex

parte* hearing nor was she informed as to the status after waiting all day, without an

accommodation, still recovering from her surgery and combating other symptoms of her anxiety that manifest physically.  Judge Howell refused to hear from Ms. Allison and denied her emergency motion for relief referring to Ms. Allison as "confused and nonsensical" in a minute order on the public docket.  Ms. Allison literally was requesting her three-year-old payout for her worker's compensation claim, her retirement payout, and to enjoin the government's blatant retaliation as she was dealing with a reoccurring infection in her uterus.  The first symptom of becoming septic due to infection is literally "confusion." However, the woman who literally wrote the Patriot Act decided to be petty and contradict herself[54].

201. On February 5, 2024, Ms. Allison became admitted to the Fifth Circuit Court of Appeals; the very next day Robert Prender filed a bar grievance against Ms. Allison.  A couple of days later Ms. Allison attempted to file at the Foreign Intelligence Surveillance Court but the judicial law clerk for the honorable Amit Mehta, who violated Appellant's rights by falsely stating that the court is not "open to the public."

202. Suspecting government interference, Ms. Allison used a spare phone her neighbor provided to her on December 4, 2023, swapped the SIM card and called her husband on Facetime audio. It worked and for the first time in two years, Mr, Young and Ms. Allison spoke for hours before he became audibly "scared poopless" and the call abruptly ended.  Since then, Plaintiffs Mr. Young and Ms. Allison have spoken a handful of times on recorded calls and Facetimes confirming each were receiving texts, emails, and even calls purportedly from the other spouse that was not either of them.

203. On February 16, 2024, at the Westin Washington, D.C. City Center located at 1400 M St NW Washington, DC 20005, Ms. Allison recorded how she was harassed in what seemed

to be an attempt to bait her to react to the point she left the property.

204. On February 24, 2024, Ms. Allison again recorded the harassment at an Air BnB where there was fighting and a violent attempt to enter her unit.

205. On February 26, 2024, Ms. Allison's of-counsel attorney, Ms. Plant, was somehow arrested in Orlando, Florida, after Mr. Jones became violent with her yet again[55].

## X. VACATE 2017 OPA SETTLEMENT AGREEMENT REINSTATE BOP FAD

### A. Exhaustion and Notice

206. Instead of filing an appeal or request for reconsideration, the complainant may file a civil action in federal district court; and filing a civil action terminates Commission processing of an appeal. *See* 29 C.F.R. § 1614.409.

### B. Notice Requirements Met

207. Civil action under Title VII of the Civil Rights Act of 1964 or the Rehabilitation Act of 1973, a federal sector complainant must first exhaust the administrative process set out at 29 C.F.R. Part 1614. "Exhaustion" for the purposes of filing a civil action may occur at different stages of the process. The regulations provide that civil actions may be filed in an appropriate federal court 180 days after the date of filing a complaint if an administrative appeal has not been filed and final action has not been taken.

208. Ms. Allison complied with 29 C.F.R. § 1614.504(a), to vacate the settlement agreement by notifying the EEO Director in writing of their failure to comply on January 10, 2024. However, she withdrew the appeal in order to comply with the 30-day notice requirement. The director ignored Ms. Allison, did not respond, and proceeded to correspond with EEOC.

EEOC failed to acknowledge Ms. Allison until June 12, 2024, while she remained under surveillance and without medical care.

## XI.  CRIMINAL REFERRAL IS TITLE VII RETALIATION

209. Filing of a criminal complaint or investigation for **retaliatory** purposes qualifies as a materially adverse action under Title VII.  *See White*, 548 U.S. at 64 (favorably citing a Tenth Circuit decision ***"finding actionable retaliation where employer filed false criminal charges against former employee who complained about discrimination"*** (*citing Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984 (10th Cir. 1996))); *see also Steele v. Schafer*, 535 F.3d 689, 696 (D.C. Cir. 2008) (noting that "the Supreme Court [has] indicated that a **false report to government authorities can constitute retaliation**," and accordingly finding actionable the filing of a false report to the D.C. Office of Unemployment Compensation contesting the employee's unemployment benefits). This is so even though it is the prosecutor, not the employer, who decides whether to pursue criminal charges after the complaint is filed. Like the filing of a criminal complaint, **FBI surveillance or an investigation** "deter[s] victims of discrimination from complaining to the EEO[]," thus interfering with employees' "unfettered access to Title VII's remedial mechanisms." *White*, 548 U.S. at 68 (internal quotation marks omitted). Given that DOJ's referral may qualifies as a materially adverse action and that such an

action falls outside *Egan*, Plaintiffs claims of reprisal focus on retaliatory animus.

### A. Case Study

### Case Study Client Jamone Banks | Eastern District of Virginia

210.  After ensuring ATF, prosecutors and the federal judge overseeing the matter of Mr. Banks would not seek charges for his possession of firearms after the Commonwealth of Virginia erroneously granted him with a state pardon for his federal conviction, he was arrested at the Orlando Airport on March 30, 2022, as a Fugitive from Justice, while on his way to the Dominican Republic, out of the Commonwealth of Virginia. This was eight days after Ms. Allison appeared on the ballot for U.S. Congress against Glenn Ivey, and at all times under retaliatory surveillance. He was arrested for purportedly providing False Statements on Firearms Consent Form and Possession of a Firearm. Mr. Banks was never presented with a warrant or any other type of charging document.

211. He was refused a hearing within the statutory time frame.  Upon information and belief this was a direct retaliation where the information obtained from Ms. Allison's retaliatory surveillance was used on Mr. Banks. State Rep Michelle Raynor-Goolsby, State's Attorney Dave Aronberg, and more highprofile Florida and Virginia attorneys were on this matter. A federal judge, ATF, and probation worked hard and save him only for Henrico county to falsify a fake warrant.



## XII.  INVOLUNTARY COMMITMENT AS RETALIATION

212. Pursuant to 18 U.S. Code § 4247(i), the Attorney General may order the involuntary commitment of an individual. *See*: https://www.law.cornell.edu/uscode/text/18/4247

**(i)** The Attorney General—

    **(A)** may contract with a <u>State</u>, a political subdivision, a locality, or a private agency for the confinement, hospitalization, care, or treatment of, or the provision of services to, a person committed to his custody pursuant to this chapter;

    **(B)** may apply for the civil commitment, pursuant to <u>State</u> law, of a person committed to his custody pursuant to section 4243, 4246, or 4248;

    **(C)** shall, before placing a person in a facility pursuant to the provisions of section 4241, 4243, 4244, 4245, 4246, or 4248, consider the suitability of the facility's <u>rehabilitation programs</u> in meeting the needs of the person; and

    **(D)** shall consult with the Secretary of the Department of Health and Human

Services

On May 5, 2024, Ms. Allison called Mr. Ivey demanding that she stop the harassment she had been experiencing.  He referenced her mental health.  In the following months the blatant harassment was met with defamatory accusations that Ms. Allison is somehow "unstable" mentally.  The court can take judicial notice of the quality of her filings as well as the timeline of harsh retaliation.

### A.  Case Study | Mr. Steven T. Corbin

213. On April 23, 2015, Mr. Corbin, proceeding without counsel, commenced an action in the Circuit Court of Maryland for Montgomery County, naming Lee J. Lofthus, Assistant Attorney General for Administration and "JMD Finance Staff" at the U.S. Department of Justice, Justice Management Division (herein "DOJ") as a defendant, and filed an Amended Complaint on April 24, 2014.  By May 5, 2015, Mr. Corbi was arrested in Jefferson County, Alabama, and received an involuntary commitment issued by Jefferson County, Alabama Probate Court, without his knowledge, consent or any due process.  He was then transferred to the University of Alabama Birmingham Department of Veterans Affairs.  *See:* page 32 https://storage.googleapis.com/msgsndr/7SMarDC7BRap5Jllw3d7/media/66a6fd2b6dce4594afd 8a2bd.pdf He further complains that he was forced to take an anti-psychotic medication against his will.  *Id.*

214. Mr. Corbin complained of loud music, banging noises, as well as chemicals being sprayed at his residence. *See* pages 30-31: https://storage.googleapis.com/msgsndr/7SMarDC7BRap5Jllw3d7/media/66a16b0b6 0ee7381307e55c.pdf His assertions of being "implanted" and "surveillance on his body" understandably reads as far-fetched and outlandish.  *Id.*  However, it appears as though he was

attempting to articulate that he was of information and belief that he had been subjected to retaliatory surveillance. Individuals employed in senior management offices at the U.S. Department of Justice, rarely have any publicly available employment law matters to review for this very reason. The immediate rush to judgment, especially for a *pro se* litigant oftentimes leaves their viable claims for relief unresolved. As a former employment law attorney for DOJ, the undersigned counsel can state with particularity and evidence of her own, as well as the many clients of the impacted law firm; Mr. Corbin was ***not*** mistaken. He simply did not use the phrase subjected to retaliatory surveillance subsequent to his complaints which should have provided him with protection pursuant to the No FEAR Act and the WPA. It appears as though the threats the undersigned counsel has received from Mr. Ivey, Ms. Plaskett, and the unknown individuals sending her threats of arrest, involuntary commitment, death, and more has occurred to Mr. Corbin and a number of individuals in the client management software system of the undersigned

counsel's law firm.

215. The common denominator appears to be Mr. Lofthus. Given his numerous conflicting roles that went unchecked for many years, he has been able to fly under the radar with the most unconscionable retaliation. While all of his roles are troublesome, his role as the head of the threat provided him with unyielding, unchecked power in violation if the rules, policies, and procedures of DOJ.

## XIII.  PREVENT PROSECUTION

216. Here, Plaintiff seeks to prevent their own prosecutions; request affirmative relief regarding the U.S. Department of Justice's blatant lies and employment law retaliation targeting not only Ms. Allison, but her minor child, husband, and the clients of their businesses. Because Plaintiffs and their businesses has not been convicted of any crimes, the continued deprivation of their life, liberty, and property interests violates their Due Process right to be *free from punishment. See Bell* v. *Wolfish*, 441 U.S. 520, 535 (1979) ("[U]nder the Due Process Clause, a detained person may not be punished prior to an adjudication of guilt in accordance with due process of law.").

217. In addition, the harassment her clients have experienced, including Mr. Banks being falsely imprisoned and convicted of frivolous charges requires that the undersigned counsel request the prevention of any of the prospective clients, clients, her colleagues, friends, and family members from being prosecuted or detained as a result of Defendants animus towards Ms. Allison.

## XIIII.  EACH PLAINTIFF IS DETAINED/MS. ALLISON WRONGFULLY ARRESTED BY DHS, USM, AND FPS

218. Restraint can be by unreasonable duress based on an ***abuse of process[30]***. To prove an abuse of process tort, the plaintiff needs to prove that the defendant invoked the legal system

---

[30]*See:* https://www.findlaw.com/injury/torts-and-personal-injuries/false-imprisonment.html

in order to extort, threaten, or <u>harass</u>[31] the plaintiff.

220. Eighth Amendment analysis of deliberate indifference claims traditionally involves both an objective and subjective component, the Supreme Court has strongly indicated that pretrial detained persons need only show that defendants' conduct was objectively unreasonable. *See Richmond* v. *Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018). Here, Defendants purposely refuse to provide Ms. Allison and Mr. Young access to their children, each other, healthcare, access to attorneys, their businesses, political committees, and to be free from government monitoring and interference. Her incarcerated individual clients have had their right to conflict-free counsel violated, and the clients who are not incarcerated with a conviction are intimidated into giving up seeking clemency despite having paid based on what they see the government doing to Ms. Allison. Ms. Allison's minor son is also detained being kept from his mother against his will.

219. Punishment is established if the jailer's conduct is either not rationally related to a legitimate, non-punitive government purpose or is excessive in relation to that purpose. *Id.* at 561; *see also J.H.* v. *Williamson Cty.*, 951 F.3d 709, 717 (6th Cir. 2020) (applying *Bell* test to pre-trial detained person's conditions of confinement claim); *Turner* v. *Stumbo*, 701 F.2d 567, 572-73 (6th Cir. 1983). Each client is now on high alert almost have convictions. Those convictions were sought to be forgiven through clemency; however, The Pardon Attorney has discovered the existence of surveillance of the firm created while she was still employed at DOJ. Defendants conspiring to profit off of the records and audio of each The Pardon Attorney client privileged attorney-client communication is not legitimate, non- punitive government action. It is literally punishing the clients for choosing The Pardon Attorney resulting in economic loss to the

---

[31]*See*: https://www.law.cornell.edu/wex/harass

firm and each client.

**A. Case Study**

**Case Study Jesus Gregorio Macias-Munoz | Western District of Texas**

220. His motion to reduce his sentence pursuant to Compassionate release was granted on December 15, 2023.  However, three days later, Ms. Allison was informed the government needed more time to respond to an **already granted** motion. The gaslighting has not stopped and he's been blind since 1994, prior to his conviction, the U.S. Marshal was aware, but no one obtained his medical records besides the undersigned counsel.



**B.  Mark Coates and Beryl Howell False Statements**

300. On September 10, 2024, Ms. Allison observed the trial of *United States v. Gonzalez-Oseguera*, 1:16-cr-00229 (D.D.C.) in senior federal district court Judge Beryl Howell's courtroom. Halfway through lunch she stood as her right hip began hurting and the clerk noticed her and asked if she needed something.  Mark Coates immediately called the court's federal protective service falsely accusing Ms. Allison of being" aggressive and rude" when she simply stated she had filed an *ex parte* emergency motion in response to his question. Seated and silent

as she was dealing with the excruciating pain in her right hip, over two dozen U.S. Marshals and Homeland Security officers arrived immediately ordering Ms. Allison to leave. When she inquired as to why in a low monotone voice, she was aggressively told she was a disruption and a number of other false claims. Ms. Allison informed officers she had every right to observe a public trial, answered a question, is in excruciating pain and has experienced the same type of harassment for years. Medics were called in and Ms., Alison's blood pressure was 171/100 seated. At no point was she" upset" as officer attempted to state over the EMTs. She had to be physically placed on a stretcher as she experienced an anxiety attack and was unable to move, throughout this time officers repeatedly stated she was under arrest for refusing to leave without any care or concern about her health or well being.  The officer argued with EMTs and ordered Ms. Allison out of the ambulnce saying they were not charging her,  EMTs began arguing back stating they needed to ensure Ms. Allison's health. Eventually she was transported to Sibley Memorial where several cysts were found on her right ovary, blood was located in her urine, and an abnormal EKG confirmed a heart abnormality when she got a second opinion at Georgetown hospital.  At no point was she given antibiotics.

## XV. CONGRESSIONAL INTERFERENCE

### A. Congressional Proxy Liability Conflicts | Ms. Allison's FISA Warrants:

301.The liability of individual Congressional members Mr. Ivey, Ms. Plaskett, and Ms. Crockett are not protected by FISA directives because employment retaliation is not a covered civil action.  See: https://www.law.cornell.edu/uscode/text/50/1885a

302. 50 U.S.C. § 1826 provides for semiannual congressional oversight of physical searches under FISA. See: https://www.everycrsreport.com/reports/RL30465.html#fn107 Defendant, Mr. Garland, The Attorney General, is directed to "fully inform" the **Permanent**

**Select Committee on Intelligence of the House of Representatives**, the Select Committee on Intelligence of the Senate, and the Senate Judiciary Committee *See*: https://www.everycrsreport.com/reports/RL30465.html#fn108 with respect to all physical searches conducted under 50 U.S.C. § 1821 *et seq*. Also on a semiannual basis, the Attorney General is required to provide a report to "those committees" and to the **House Judiciary Committee** *See*: https://www.everycrsreport.com/reports/RL30465.html#fn109 setting forth: the total number of applications for orders approving FISA physical searches during the preceding six month period; the total number of those orders granted, modified, or denied; the number of such physical searches involving the residences, offices, or personal property of United States persons.

303. Given the fact that Jonathan Buckney-Smalls sought Ms. Allison out in 2021, to run for U.S. Congress, and his wife is Congresswoman Stacey Plaskett, Subcommittee Ranking Member, Permanent Select Committee on Intelligence of the House of Representatives, the agency is responsible for the harassment they have caused.  Finally, Glenn Ivey, Ms. Allison's opposing counsel as a SAUSA and her 2022 Congressional opponent is a member of House Judiciary Committee. During this time period, Beryl Howell was the senior judge for the U.S. District Court for D.C., overseeing all court matters, including the Foreign Intelligence Surveillance Court.

**B. Glenn Ivey, Stacey Plaskett, and Jasmine Crockett Interference**

304. Congress has no power to supervise family law matters, elections, state civil matters, or state criminal prosecutions.  Nor does Congress have the power to interfere "for the personal aggrandizement of the investigators or to punish those investigated." *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020) (quoting *Watkins v. United States*, 354 U.S. 178, 187 (1957))

(internal quotation marks omitted).  Yet that is precisely what Congressman Ivey and Congresswoman Plaskett have done.  The two of them and their allies have stated they do not like Ms. Allison for childish and peculiar reasons with direct and indirect threats to her life.

305. Mr. Ivey and Ms. Plaskett have no power under the Constitution to oversee state and local criminal matters of any of the Plaintiffs.  By definition, then, he has no legitimate legislative purpose for issuing this subpoena.  The involvement of both Mr. Ivey and Ms. Plaskett threatens the sovereign powers of the States, confidence in the secrecy of grand jury proceedings, and the integrity of any ongoing criminal prosecution.  This Court should enjoin any known or unknown enforcement against Plaintiffs.

306. The Constitution "with[held] from Congress a plenary police power," *United States v. Lopez*, 514 U.S. 549, 566 (1995), which "is controlled by 50 different States instead of one national sovereign," *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 536 (2012); *accord United States v. Morrison*, 529 U.S. 598, 618 (2000).  "[P]rimary authority" "for defining and enforcing the criminal law" is vested in the States.  *Lopez*, 514 U.S. at 561 n.3.  That division of authority requires that "[o]rdinarily" there should "be no interference with [state] officers," who are "charged with the duty of prosecuting offenders against the laws of the State and must decide when and how this is to be done." *Younger v. Harris*, 401 U.S. 37, 45 (1971).  "Federal intrusions into state criminal trials frustrate both the States' sovereign power to punish offenders and their good faith attempts to honor constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128 (1982).

307. But rather than allowing any real "investigation" to proceed in the ordinary course, Mr. Ivey and Ms. Plaskett are participating in a campaign of intimidation, retaliation, and obstruction.  Ms. Allsion has had to resort to social media to memorialize and documents just a

few of the outlandish, unbelievable, and unconscionable attacks against her.   Each post of her simply telling the truth is met with retaliation; just like when she was at DOJ.

308. Ms. Allison has received multiple death threats from both Mr. Ivey and Ms. Plaskett. In one instance, Mr. Ivey emailed Ms. Allison while referencing Whitewater alluding to the "suicide" of Vince Foster.

309. Mr. Ivey and Ms. Plaskett's unwarranted "incursion" into a state criminal case. *Printz v. United States*, 521 U.S. 898, 920 (1997), needs to immediately be addressed.  Their conduct of harassing Ms. Allison and Mr. Young while contacting the clients of her law firm and interfering with the courts where her personal and client matters are pending for a retaliatory political circus designed to undermine the rule of law or any state's police powers.  In cases like this one implicating "substantial" federalism or separation of powers concerns, the Supreme Court's decision in *Mazars* requires the federal courts to probe Congress's asserted purposes for pretext and evidence.  140 S. Ct. at 2036.

310. Members of Congress are not free to invade Maryland and Texas' sovereign authority for their or political aims.  Congress has no authority to harass a citizen who is not and has not been involved in politics or television in over two years based on the bullying of Mr. Ivey and Ms. Plaskett. Nor can Congress "set up" a former candidate for Congress and former U.S. Department of Justice employee.

311. *First*, the protective orders, subsequent final orders, other proceedings pertaining to Plaintiff's minor child, no-bond arrest warrant, and actions against her Maryland law license are invalid, unenforceable, unconstitutional, and *ultra vires* because it has no legitimate legislative purpose, *Watkins*, 354 U.S. at 187, and manifestly fails each of the four factors the Supreme Court established in *Mazars* to evaluate the enforceability of a congressional interference directed to

another branch of government. 140 S. Ct. at 2035–36.  Namely, Congress has no power under Article I of the Constitution to oversee, let alone disrupt, ongoing state law matters, and the shifting array of legislative purposes the Mr. Ivey and Ms. Plaskett have invoked in favor of their demands do not "warrant[] the significant step" of seeking information from the Maryland or Texas.  *Id.* at 2035.

312.  *Second*, even if Mr. Ivey and Ms. Plaskett; and their Committees were able to demonstrate a valid legislative purpose and withstand the *Mazars* test (they cannot), any indictments, convictions, or additional interference with Ms. Allison, her husband, their minor children, and the clients of her law firm would not be enforceable because of the theft of property and it could allow the Committee to seek secret grand jury material, confidential investigative material, and information clearly protected by the attorney-client, work product, deliberative process, law enforcement, informant's, and public interest privileges of nearly 4,000 clients in the client management software system of Ms. Allison.  These privileges exist to protect precisely the type of information Mr. Ivey and Ms. Plaskett continue to engage in unethical conduct to obtain.  Even if Ms. Allison were under any valid investigation, the confidential law enforcement and legal materials compiled during investigations and in the lead-up to a prosecution is not for ther consumption.  The privileges are designed to prevent the type of obstruction and interference with ongoing criminal investigations and prosecutions that Mr. Ivey and Ms. Plaskett's conduct represents.

**C. Congressional Criminal Referrals**

313. Legislative investigations by congressional committees can be wide ranging and often directly or indirectly involve issues of misconduct. As the U.S. Court of Appeals for the D.C. Circuit (D.C. Circuit) recently noted, "[m]issteps and misbehavior are common fodder for legislation." *See*: *Trump v. Thompson*, 20 F. 4th 10 - Court of Appeals, Dist. of Columbia

Circuit 2021. As a result, congressional committees will occasionally come across evidence of a criminal offense in the course of an investigation. *See*:

https://crsreports.congress.gov/product/pdf/LSB/LSB10879 When that occurs, committees have sometimes chosen to take that information and make a "criminal referral" to the DOJ. *Id.*

314. Although there is no established or accepted definition, a congressional criminal referral is a ***non-binding*** communication to the DOJ, made either by a congressional committee or by ***individual Members of Congress***, that specifically articulates evidence supporting the possible commission of a crime and asks the DOJ to either conduct further investigation or otherwise pursue the matter. *Id.*

315. The process by which committees or ***Members*** make criminal referrals to the DOJ is generally ***not governed by federal statute or chamber rules***. *Id*. It is instead typically an informal, *ad hoc* process, largely uninhibited by legal or procedural constraints, in which committees, committee chairs, or individual Members of Congress make referral decisions based on the facts and circumstances of a given case. *Id.*

316. Criminal referrals reflect the constitutional separation of powers. Congress is not a "law enforcement or trial agency" and may neither itself, nor through its officers, directly enforce federal law. "Legislative power," the Supreme Court has held, "is the authority to make laws, but not to enforce them . . . ." *See*: *Springer v. Philippine Islands*, 277 U.S. 189 - Supreme Court 1928.

317. Congress has no power to bring its own criminal prosecutions for violations of federal law; the Constitution reserves that authority for the executive branch. *See*:

https://crsreports.congress.gov/product/pdf/LSB/LSB10879

318. If a member of congress were to **publicly make an entirely unsupported criminal referral with the intent of damaging the target's reputation**—it could raise ethical issues or

possibly trigger civil claims for defamation, though the latter would likely implicate congressional immunities under the Speech or Debate Clause.  However, as stated above those immunities are waived as it applies to individual congressional member Defendants.

## XVI. PRIVACY/WIRETAPS

A. **Government and state use of unconstitutional and unlawful surveillance**
   1. **FISA**

319. For example, to conduct electronic surveillance targeting someone inside the United States, FISA requires that the Foreign Intelligence Surveillance Court (FISC) find that there is probable cause to believe that the target is a foreign power or an agent of a foreign power.

https://www.intelligence.gov/ic-on-the-record-database/results/574-protecting-u-s-person-identities-in-fisa-disseminations

320. For example, to conduct electronic surveillance targeting someone inside the United States, FISA requires that the Foreign Intelligence Surveillance Court (FISC) find that there is probable cause to believe that the target is a foreign power or an agent of a foreign power.

https://www.intelligence.gov/ic-on-the-record-database/results/574-protecting-u-s-person-identities-in-fisa-disseminations

321. It does not appear as though any of these procedures have been followed:

https://www.dni.gov/index.php/ic-legal-reference-book/guidelines-regarding-disclosure-to-the-director-of-central-intelligence-and-homeland-security-officials-of-foreign-intelligence-acquired-in-the-course-of-a-criminal-investigation

## 2. Federal and State Surveillance

322. Federal law, under the Supremacy Clause, has the power to preempt or displace state law.  Federal law is the highest authority; therefore, federal law supersedes or supplants any state or local regulation or statute that conflicts it. This doctrine comes from the Supremacy Clause of

the United States Constitution (U.S. Const. art. VI., § 2).

333. The Federal Communications Act of 1934 (47 U.S.C.A. §§ 151, et seq.) provides that no person "not being authorized by the sender shall intercept any communication and divulge or publish the existence, contents, substance, purport, effect or meaning of such intercepted communication to any person." 47 U.S.C.A. § 605. *In Nardone v. United States*, 308 U.S. 338 (1939), it was held that this section prohibits divulging such communications in federal criminal prosecutions and prohibits the use of information thus obtained in such prosecutions (the "fruits of the poisonous tree" doctrine). Evidence obtained by wiretapping in violation of § 605, is rendered inadmissible in a state court solely because its admission in evidence would also constitute a violation of 47 U.S.C.A. § 605. *Lee v. State of Fla., 392* U.S. 378 (1968). The mere interception of a telephone communication by an unauthorized person does not in and of itself constitute a violation of § 605. Under Federal law, 18 U.S.C. § 2511(2)(d) requires only that one party give consent.

334. Only where the interception is followed by the divulging of the communication, as by introducing it into evidence, would there be a violation of § 605. The Federal Wiretap Act, found at **18 U.S.C. § 2520, protects individual privacy in communications with other people by imposing civil and criminal liability for intentionally intercepting communications using a device, unless that interception falls within one of the exceptions in the statute**.  Although the Federal Wiretap Act originally covered only wire and oral conversations *(e.g*., using a device to listen in on telephone conversations), it was amended in 1986 to cover electronic communications as well (e.g., emails or other messages sent via the Internet).

335. For example, to conduct electronic surveillance targeting someone inside the United States, FISA requires that the Foreign Intelligence Surveillance Court (FISC) find that there is

probable cause to believe that the target is a foreign power or an agent of a foreign power.

### 3. Private Citizen Recordings

336. Although the Supreme Court has not addressed the issue, six federal appellate courts have explicitly recognized this constitutional right to record under the First Amendment, reflecting a growing consensus on the matter. *See Askins v. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018); *Fields v. City of Philadelphia*, 862 F.3d 353, 356 (3d Cir. 2017); *Turner v. Lieutenant Driver*, 848 F.3d 678, 689 (5th Cir. 2017); *Am. C. L. Union of Ill. v. Alvarez*, 679 F.3d 583, 600 (7th Cir. 2012); *Glik v. Cunniffe*, 655 F.3d 78, 87 (1st Cir. 2011); *Smith v. City of Cumming*, 212 F.3d 1332 (11th Cir. 2000). The Fourth Circuit Court of Appeals has not yet addressed the issue of the constitutional right to record[42]. Personal safety, public spaces, and organizations are a few of the exceptions to two-party consent requirements.

337. In *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010)(" . . . the court held that a cause of action under §2511(2)(d) requires that the interceptor intend to commit a crime or tort independent of the act of recording itself"), citing, *Desnick v. American Broadcasting Co.*, 44 F.3d 1345, 1347-48 (7th Cir. 1995); *Sussman v. American Broadcasting Co*, 186 F.3d 1200, 1201 (9th Cir. 1999).

### Maryland

338. Violations of the <u>Maryland Wiretap Act</u>, Cts. & Jud. Proc. § 10-401 et seq. (2006), could lead to criminally prosecution and its inadmissibility in state court.  However, in *Martin v. State*, 218 Md.App. 1, 96 A. 3d.765 (2014), cert. denied 440 Md. 463(2014), *cert denied* 135 S. Ct. 2068 (2015) in which the Court of Special Appeals held that cell phone recordings are not covered under the state wiretap statute. While arguments could be made that recording someone speaking is generally an "interception" for wiretap act purposes, the Maryland Wiretap statute

only prohibits interceptions if they occur through the use of any "electronic, mechanical, or another device." CJP §§ 10-401(10) and 10-402(a). According to that case, <u>the Act specifically excludes "telephone" from the definition of an "electronic, mechanical or another device."</u>

339. Furthermore, as the Court of Special Appeals recently stated, "a video recording without audio recording or without oral communication is not prohibited under the wiretap statute." *Holmes v. State,* 236 Md. App. 636, 654, 182 A. 3rd 341 (2018). (There is a separate statute prohibiting surreptitiously recording in someone's house. Md. Crim. Law Section 3-903 - Camera surveillance.)

340. Therefore, Plaintiffs using their cell phone to record various incidents violating their U.S. Constitutional rights, is permissible.

341. Here, Ms. Allison's Texas based businesses require an opt-in to recordings. The privacy notices accurately depict the use of information to this that interact with the Texas-based law firm. At all times, Ms. Allison has made recordings of all issues alleged in the complaint and has remained in compliance with local, state, and federal laws in each jurisdiction.

342. However, it is notewirthy that where Constitutional rights are violated, federal wiretap laws prevail, only requiring one-party consent.

### FIRST CAUSE OF ACTION

**(Injunctive & Declaratory Relief)**
**The Subpoena Is *Ultra Vires* And**
**Exceeds the Committee's Constitutional Authority**
**Ivey, Plaskett, Crockett**

343. Plaintiffs repeat and re-alleges the foregoing paragraphs as if fully set forth herein.

344. The protective order and subsequent civil family law and the barrage of harrassing orders from lawsuits in Maryland and Texas against Ms. Allison are invalid, unenforceable, unconstitutional, and *ultra vires* because they have no legitimate legislative purpose. *See*

*Watkins*, 354 U.S. at 187.

345. The named members have not stated what their intent with Ms. Allison is, but it is destroying the life of an innocent 10-year-old.  It is causing Ms. Allison duress, her family, as well as the clients of her law firm. Ms. Allison is not interested in politics. She simply wants to be a wife and mother.  No one on the Committee has stated their purpose in seeking information from Ms. Allison, her husband, and clients.  These orders which Ms. Allison has never received proper notice or been served with have been designed to punish her for bringing an employment discrimination lawsuit and subsequently entering the ballot for U.S. Congress in Maryland against Mr. Ivey without permission as an unprecedented abuse of power.

346. Congress lacks any enumerated power entitling it to "conduct oversight" into a single person's every movement while intercepting her confidential client files, research, sharing it amongst each other and in some instances even publishing Ms. Allison's work as their own. Its weird and concerning. However, as outrageous as these claims may be the records and audio in FBI's possession should do one of two things: support the claims raised in this complaint or not. This is even more reason that Judge Howell's resistance to ordering the release of these records and audio is so problematic. The Supreme Court held more than 140 years ago that Congress may not deploy its subpoena power to "interfere with" a case "pending in a court of competent jurisdiction." *Kilbourn v. Thompson*, 103 U.S. 168, 194 (1880). Congress is not "a law enforcement or trial agency," for "[t]hese are functions of the executive and judicial departments of government." *Watkins*, 354 U.S. at 187.  "No inquiry is an end in itself; it must be related to, and in furtherance of, a legitimate task of the Congress. Investigations conducted solely for the personal aggrandizement of the investigators or to 'punish' those investigated are indefensible." *Id.*  And under the Tenth Amendment, the

"powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend X. This framework reflects our principles of federalism and dual sovereignty, by which the states "remain independent and autonomous within their proper sphere of authority." *Printz*, 521 U.S. at 928. The Constitution "reposed [police power] in the States." *Morrison*, 529 U.S. at 618. It clearly conferred "primary authority for defining and enforcing the criminal law" on the States. *Lopez*, 514 U.S. at 561 n.3. There is no congressional power to interfere—as the Chairman and the Committee seek to do here—with the states' "proper sphere of authority" to police. *Printz*, 521 U.S. at 928. In short, Congress has no legitimate legislative objective to pursue here.

347. As a result, the members and their congressional allies have assisted in the harrassment and retaliation against Ms. Allison creating fabricated accounts of their encounters with her for seemingly purported legislative interests and purposes that supposedly justify the member's and Committee's unwarranted "incursion" into state criminal and civil cases concerning herself, her husband, and her clients. *Printz*, 521 U.S. at 920. These are just obvious pretexts for interfering with Ms. Allison's and her personal, professional, and political life.

348. Any instructions, subpoenas, documents, or orders related to Ms. Allison, her husband, or clients fails to satisfy the Supreme Court's test in *Mazars*. 140 S. Ct. at 2035. Namely, the purported legislative purposes that could be invoked to support any instructive document is unsupported, speculative, specious, and/or unconstitutional. The subpoena is also *ultra vires* because the Judiciary Committee does not have jurisdiction over State criminal prosecutions under Rule X of the Rules of the House of Representatives.

349. The impermissible interference in Ms. Allison's law firm and the criminal matters of her

clients similarly lack any valid legislative purpose. The interference with the client matters and continued gaslighting with orders, warrants for her arrests, and keeping she and her husband apart while spreading vicious rumors will be invalid, unenforceable, unconstitutional, and *ultra vires*.

350. Plaintiffs suffer and continue to suffer irreparable harm from the risk that the members will continue to disparage Ms Allison's good name and character, as well as her family and clients of her businesses. Plaintiffs further lack any adequate remedy at law.

**SECOND CAUSE OF ACTION**
**(Injunctive & Declaratory Relief)**
**Violation of Privilege**
**Ivey, Plaskett, Crockett**

351. Plaintiff repeats and re-alleges the foregoing paragraphs as if fully set forth herein. Even if the members were able to demonstrate a valid legislative purpose and withstand the *Mazars* test (they cannot), any documents still would not be enforceable because it could allow the members and the Committee to seek secret grand jury material of her clients, confidential investigative material belonging to her clients, and documents and communications that are clearly privileged under the attorney-client privilege, and the attorney work product doctrine. Crim. Proc. Law § 190.25(4)(a). "The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011). The attorney work product doctrine protects documents prepared in anticipation of litigation by a party or its representative. Fed. R. Civ. P. 26(b)(3).

352. Privilege has not been waived.

353. Knowledge about her law firm or clients seemingly suggests that there has been a

demand for privileged documents and confidential material that were improperly sought.

### THIRD CAUSE OF ACTION
### (Injunctive Relief)
### Proxy FISA Harrassment

354. Plaintiffs request the harassment by non-employees to cease immediately. This includes the spreading of false and defamatory information related to Ms. Allison, her husband, family, and clients; but the actions of preventing Ms. Allison from having contact with her minor child, husband, her business accounts such as Apple, Meta, Facebook, LinkedIn, X, and more. While this complaint focuses solely on declaratory, injunctive, and affirmative relief, Plaintiffs do not waive future monetary claims against name and unnamed Defendants.

### FOURTH CAUSE OF ACTION
### §2521. Injunction against illegal interception

355. Whenever it shall appear that any person is engaged or is about to engage in any act which constitutes or will constitute a felony violation of this chapter, the Attorney General may initiate a civil action in a district court of the United States to enjoin such violation. The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.(Added Pub. L. 99–508, title I, §110(a), Oct. 21, 1986, 100 Stat. 1859.)

356. Ms. Allison nor her husband have any indictments against them after repeatedly searching and asking questions. Given the fact that the surveillance began while she was still

employed by DOJ, any indictment or charge would undoubtedly be retaliatory in nature.

**FIFTH CAUSE OF ACTION**
**Mandamus & Affirmative Relief**
**The Head of Each Agency Composing the NSC and HSC, DOJ Garland, Monaco,**

**Howell**

357. The APA provides for judicial review of final agency action. 5 U.S.C. 702. It states that a person "suffering [a] legal wrong because of agency action," or "adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review." *Id*. Only non-monetary relief—such as injunctive or declaratory relief—is available. *Id*. The reviewing court must either "compel agency action unlawfully withheld or unreasonably delayed," or "hold unlawful and set aside agency action, findings, and conclusions" that violate any one of six factors. 5 U.S.C. § 706.

358. The APA also allows litigants to challenge an agency's unreasonable delay. The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and authorizes a federal court to "compel agency action unlawfully withheld or unreasonably delayed," id. § 706(1). To be entitled to relief under the APA, a plaintiff must show either that the agency unlawfully withheld action it was required to take, such as when an agency fails to meet a congressionally-set deadline, *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999), or that the agency unreasonably delayed taking "a discrete agency action that it is required to take," *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Plaintiffs understand that as with mandamus, a court is only able to compel the agency to act; it cannot compel the agency to decide the applications in favor of any of the plaintiffs.

359. As it pertains to the actions of the Circuit Court for Montgomery County, Maryland, and the Dallas County, Webb County, and federal court's repeated actions in failing to provide notice, serve Ms. Allison, deny her access to the courts and assist in the parental kidnapping of her minor child is considered a final agency action. *Zheng v. Pogash*, 416 F. Supp. 2d 550, 556 n.9 (S.D. Tex. 2006)(" . . . a state court dependency hearing for a special immigrant juvenile status petition was final agency action.").

360. As it relates to setting aside and quashing the National Security Letters issued to Ms. Allison's husband, family, friends, clients, business contacts, social media companies, email providers, banks, taxes, and any other person or corporation that received one unlawfully and unconstitutionally as they are necessary witnesses in a number of pending actions before several different court proceedings.

## SIXTH CAUSE OF ACTION

## UNLAWFUL AGENCY ACTION 5 U.S.C. §§ 702, 706

### Each Agency Comprising NSC and HSC, DOJ

361. Defendants' actions described herein were and are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity, and should be set aside as unlawful pursuant to 5 U.S.C. § 706.

362. Defendants' violations of Plaintiffs' constitutional and statutory rights constitute agency actions that are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and contrary to constitutional rights, power, privilege, or immunity in violation of 5 U.S.C. § 706.

363. Just in case Plaintiffs Ms. Allison or Mr. Young really are on the disposition matrix or any other terrorist screening list (since Defendants refuse to communicate), it is worth noting, that neither Ms. Allison or Mr. Young "planned, authorized, committed, or aided the terrorist attacks that occurred on September 11, 2001, or harbored such organizations or persons."

364. In addition to the direct impact on their individual activity, these restrictions have deprived Plaintiffs, U.S. citizens of important information and viewpoints about worldly affairs, interfering with their ability to run their businesses and participate effectively in the ongoing

political debate regarding these matters.

## SEVENTH CAUSE OF ACTION

### Citizenship, agency-level compassionate release of clients and prosective clients

367. 367.Under the APA, this court must "set aside agency action[] found to be arbitrary [or] capricious, contrary to constitutional right, or without observance of procedure as required by law." Id. at 767–68 (citations omitted) (cleaned up). Accordingly, "[t]he default rule is that vacatur is the appropriate remedy." *Data Mktg. P'ship v. Dep't of Lab*., 45 F.4th 846, 859 (5th Cir. 2022).

368. The Administrative Procedure Act (APA) is a federal statute that regulates federal agency action in a number of ways. Relevant here, the judicial review provisions of the APA, 5 U.S.C. § 701, et seq., provide a means for an individual—including noncitizens—to challenge unlawful decisions or action by an agency.

369. The APA provides for judicial review of final agency action. 5 U.S.C. 702. It states that a person "suffering [a] legal wrong because of agency action," or "adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review." Id. Only non-monetary relief—such as injunctive or declaratory relief—is available. Id. The reviewing court must either "compel agency action unlawfully withheld or unreasonably delayed," or "hold unlawful and set aside agency action, findings, and conclusions" that violate any one of six factors. 5 U.S.C. § 706.

## EIGHTH CAUSE OF ACTION
## REPRISAL AND WHISTLE BLOWER PROTECTION ACT RETALIATION
370. (Defendants have retaliated against Plaintiffs in violation of 5 U.S.C. 2302 (b)(8))

Plaintiff incorporates as if re-alleged paragraphs 1 through 369.

**WHEREFORE PLAINTIFFS REQUEST THIS COURT:**

Declare Congress exceeded its authority pursuant to define and punish the appropriations and supremacy clause with the creation of the ***Office of the Pardon Attorney*** where the nondelegation doctrine of the vesting clause is violated by the Office's improper *ex-parte* communications with the Federal Judiciary without informing the applicants or their counsel; directing investigations to be conducted by the Federal Bureau of Investigations against the individual applicants for Federal Executive Clemency in violation of their due process rights; prioritizing inquiries from members of the legislative branch in regards to an individual applicant without notifying all applicants of such policy; discriminating against petitioners based on their race, color, religion, sex, national origin, age, parental staus, marital status, disability, and genetic information in violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution.

Declare Congress exceeded its authority pursuant to the define and punish clause and in violation if the 13th amendment with the creation of ***PIEMC***

Declare Congress exceeded its authority pursuant to the appropriations and supremacy clause with the creation of the ***Office of the Pardon Attorney*** where the nondelegation doctrine of the vesting clause is violated by the Office's improper *ex-parte* communications with the Federal Judiciary without informing the applicants or their counsel; directing investigations to be conducted by the Federal Bureau of Investigations against the individual applicants for Federal Executive Clemency in violation of their due process rights; prioritizing inquiries from members of the legislative branch in regards to an individual applicant without notifying all applicants of such policy; engaging in *ex parte* communications with the U.S. Attorney's Office, U.S. Probation Office, the Executive Office of Immigration and Review, the Board of Immigration and Appeals, and other administrative tribunals who opine on the individual applicants for clemency without any notice as it relates to each applicant; and using witness statements disguised as character affidavits, in an unauthorized manner against the applicants for federal executive clemency without any notice to the witness or applicant in violation of their fifth amendment right against self-incrimination.

Declare Congress exceeded its authority pursuant to the appropriations and supremacy clause with the creation of the ***Federal Prison Industries*** where the nondelegation doctrine of the vesting clause is violated by the President's Executive Orders, the U.S. Department of Justice's Office of Legal Counsel "rule making," and the Federal Bureau of Investigations National Security letters that are odds with Title VII due process requirements and the Whistleblower Protection Act's prohibition on non-disclosures and gag orders.

**PLAINTIFFS REQUEST THIS COURT TO DECLARE PLAINTIFFS ARE ENTITLED TO:**

**Property Monetary Relief:**

**1. Unlawful search and seizure 41(g)**
i. forfeiture damages pursuant to 18 U.S.C. § 983(d)
If the court finds that the forfeiture is grossly disproportional to the offense it shall reduce or eliminate the forfeiture as necessary to avoid a violation of the Excessive Fines Clause of the Eighth Amendment of the Constitution.

**2. Unlawful search and seizure pursuant to 50 U.S. Code § 1705**
i. Penalties of up to $250,000

**3. Declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202**

Prohibition on Disclosure

**4. Violations of Confidential and Privileged Communications**
Pursuant to 50 U.S.C. § 1861(d)

**5. Improper Disclosure by Congresswoman Stacey Plaskett and Congressman Glenn Ivey**
https://www.law.cornell.edu/uscode/text/18/798

**6. Claims pursuant to 50 USC § 4131(b)**

**Privacy Act Monetary Relief:**

Clients entitled to privacy act violations of damages of no less than $,1000 and attorney's fees

pursuant to 5 U.S.C. § 552a(g)(1)(C) or (D).

Monetary damages pursuant to 50 U.S. Code § 1810

(1)if the aggrieved person is a United States person, $10,000 or $1,000 per day for each day of

violation; or

(2)for any other aggrieved person, $1,000 or $100 per day for each day of violation;

(b)punitive damages; and

(c)reasonable attorney's fees and other investigation and litigation costs reasonably incurred.

**THE PLAINTIFFS REQUEST A TRIAL BY JURY.**

Date: September 22, 2024

Respectfully submitted,

Tammy Allison
Ata@attorneytammyallison.com